959 So.2d 940 (2007)
James Lance ROGERS and Wendy Adkins Rogers
v.
Carl E. DICKENS, Louisiana Farm Bureau Insurance Company and Mississippi Farm Bureau Insurance Company.
No. 2006 CA 0898.
Court of Appeal of Louisiana, First Circuit.
February 9, 2007.
*942 Chadwick W. Collings, Tom W. Thornhill, Slidell, Counsel for Appellant M. Reggie Simmons and Plaintiffs/Appellants James Rogers and Wendy Rogers.
Stacey Moak, Christopher A. Mason, Andrew W. Ralston, Baton Rouge, Counsel for Defendants/Appellees Carl E. Dickens and Mississippi Farm Bureau Casualty Insurance Company.
Adrianne L. Baumgartner, Patricia P. Barattini, Covington, Counsel for Defendant/Appellee Louisiana Farm Bureau Casualty Insurance Company.
Before: KUHN, GAIDRY, and WELCH, JJ.
GAIDRY, J.
The plaintiffs' attorney in this personal injury litigation appeals a judgment holding him in constructive contempt of court. For the following reasons, we reverse the judgment.

FACTS AND PRIOR PROCEEDINGS
The plaintiffs, Wendy Rogers and Lance Rogers, filed a petition for damages on June 9, 2003, alleging that Ms. Rogers was injured on July 24, 2002, when her riding lawnmower was struck by a utility trailer being towed by Carl Dickens. The plaintiffs named as defendants Mr. Dickens and his liability insurer, Mississippi Farm Bureau Casualty Insurance Company (Mississippi Farm Bureau), as well as Louisiana Farm Bureau Casualty Insurance Company (Louisiana Farm Bureau), the plaintiffs' underinsured motorists insurer. The petition alleged that Ms. Rogers sustained "serious and permanent injuries to [her] spine, hips, shoulder, legs, nervous system, and soft tissue," "multiple seizures with loss of consciousness," "mental anguish," and "emotional distress."
In response to discovery interrogatories propounded by Mississippi Farm Bureau and Mr. Dickens (hereafter referred to for convenience as "Mississippi Farm Bureau"), the plaintiffs stated that Ms. Rogers "suffered injuries to her head and neck, with pain radiating down her left side apparently as a result of brain, neurological and spinal injuries." She identified a psychiatrist, Rene C. Duffourc, III, M.D., as one of the health care providers treating her claimed injuries and a potential expert. In her deposition given on April 8, 2004, Ms. Rogers attributed a suicide attempt in April of 2003 to unrelieved *943 pain and associated emotional distress from her alleged injuries.
Mississippi Farm Bureau retained a clinical psychologist, Kevin J. Bianchini, Ph.D., for the purpose of conducting a neuropsychological evaluation of Ms. Rogers, given her claims of possible brain injury and psychological illness caused by the accident. By letter dated June 16, 2004, Mississippi Farm Bureau's counsel advised the plaintiffs' counsel, M. Reggie Simmons, of its request that Ms. Rogers undergo an examination by Dr. Bianchini and an independent medical examination by an orthopedic surgeon. Further correspondence ensued between the opposing parties' counsel, before the dates of September 22 and 23, 2004 were selected for the neuropsychological examination. After the foregoing dates were selected, Mr. Simmons wrote to Mississippi Farm Bureau's counsel on August 17, 2004, advising that he and Ms. Rogers objected to any examination by Dr. Bianchini unless certain specified conditions were met, including disclosure of Dr. Bianchini's history of prior expert witness testimony. Further correspondence ensued relating to the adequacy of Mississippi Farm Bureau's attempts to comply with the conditions.
After a telephone conference with the trial court failed to resolve the ongoing dispute, the scheduled examination was cancelled, and Mississippi Farm Bureau filed a motion to compel the neuropsychological examination on September 14, 2004. The plaintiffs opposed that motion and responded with exceptions and a motion for a protective order.
Mississippi Farm Bureau's motion to compel was originally set for hearing on October 18, 2004. Due to a conflict on its counsel's calendar, it moved to reschedule the hearing for November 4, 2004. The plaintiffs then moved to continue the rescheduled hearing on the grounds that their counsel, Mr. Simmons, was scheduled to undergo shoulder surgery on November 1, 2004. In response to the plaintiffs' latter motion, Mississippi Farm Bureau filed an opposition memorandum which incorporated a motion seeking an order that Ms. Rogers refrain from undergoing any surgery purportedly related to her claimed injuries until after either the hearing on the motion to compel or Dr. Bianchini's examination. The hearing on the latter motion was originally set for November 29, 2004.
On October 28, 2004, Ms. Rogers was evaluated by Paul van Deventer, M.D., the orthopedic surgeon retained by Mississippi Farm Bureau.
The motion to compel the neuropsychological examination and the related matters were ultimately heard on an expedited basis in open court on November 10, 2004. Mississippi Farm Bureau presented Dr. Bianchini's testimony relating to the purposes and relevance of his proposed examination. During the course of that hearing, Mr. Simmons advised the court and opposing counsel that no surgery was then scheduled. The trial court issued written reasons for judgment on November 18, 2004, ruling that it would deny the plaintiffs' exceptions and grant Mississippi Farm Bureau's motion to compel, ordering that Ms. Rogers submit to the requested examination. In its reasons, the trial court further noted that Mississippi Farm Bureau's motion to postpone the surgery had been resolved, the court being informed that no surgery was then scheduled.
After the trial court's written reasons for judgment were issued, in the course of attempting to select examination dates, the parties disagreed as to the length and scope of the examination. The disputed points were subsequently addressed in a telephone status conference with the trial *944 court on November 22, 2004. Based upon the conference, the trial court ruled that the examination would be limited in scope to a psychological examination (as opposed to a full neuropsychological examination) and in duration to one day.[1] During the course of that conference, Mississippi Farm Bureau's counsel again inquired of Mr. Simmons whether surgery had been scheduled, and Mr. Simmons informed him it had not, to his knowledge. It is disputed by the parties whether Mr. Simmons then, in response to opposing counsel's demand, agreed to notify the defendants if any surgery was subsequently scheduled to be performed before the psychological examination was accomplished. In later testimony, Mr. Simmons denied making such a commitment, although he acknowledged the subject may have been raised.
The day after the foregoing conference, Mr. Simmons replied by facsimile telecopier to a letter from Mississippi Farm Bureau's counsel, stating that Ms. Rogers was unavailable for examination in December, and preferred an examination date of January 5, 2005.
On November 29, 2004, Ms. Rogers attended a previously-scheduled appointment with her treating neurological surgeon, Donald D. Dietze, Jr., M.D., who recommended and proceeded to schedule cervical spine surgery after Ms. Rogers accepted his recommendation.
On December 3, 2004, Mississippi Farm Bureau's counsel office contacted Mr. Simmons's office, requesting that the examination date be changed to January 24, 2005, as the prior date was no longer available. On December 9, 2004, Mr. Simmons contacted Ms. Rogers regarding the available date for rescheduling Dr. Bianchini's evaluation, and on that occasion she advised Mr. Simmons of the surgery scheduled on December 15, 2004. She also instructed him not to inform the defendants' attorneys of that fact unless a court order required such disclosure.
The cervical spine surgery was performed as scheduled on December 15, 2004. On December 20, 2004, Mr. Simmons informed the defendants' counsel by letter of the surgery.
On January 21, 2005, Mr. Simmons advised Mississippi Farm Bureau's counsel that Ms. Rogers was unable to attend the scheduled examination for health reasons. On January 31, 2005, Mr. Simmons advised Mississippi Farm Bureau's counsel that Ms. Rogers was then physically able to attend the psychological examination, and that same day Mississippi Farm Bureau's counsel requested that Ms. Rogers agree to a consent order by the trial court as to the date of the examination, based upon the previous difficulty in scheduling the examination.
Receiving no response to the above-described request, on February 17, 2005, Mississippi Farm Bureau filed a motion for a status conference, seeking an order fixing a firm date for the examination. The trial court denied the motion by order dated March 3, 2005, with the notation, "Applicant needs to file contempt motion if warranted."
On March 16, 2005, all defendants filed a joint motion for contempt against Ms. Rogers and her attorney, Mr. Simmons. In their motion, the defendants also sought awards of attorney fees, court costs, and other associated expenses related to Mississippi Farm Bureau's attempts to schedule the examination by Dr. Bianchini. The plaintiffs thereupon filed a motion for sanctions against all defendants and their *945 counsel, combined with a memorandum in opposition to the joint motion for contempt.
The foregoing opposing motions were heard on May 3, 2005. Ms. Rogers and Mr. Simmons testified at the hearing. At the conclusion of the hearing, the trial court ruled in favor of the defendants, finding Mr. Simmons in contempt, but absolving Ms. Rogers, on the grounds she had acted in reliance on her attorney's advice. The trial court also denied the plaintiffs' motion for sanctions. The trial court's judgment was signed on May 24, 2005. The trial court's order granting a "restricted" suspensive appeal to the plaintiffs and Mr. Simmons was signed November 2, 2005.[2]

ASSIGNMENTS OF ERROR
The plaintiffs and Mr. Simmons contend that the trial court erred in finding Mr. Simmons in constructive contempt of court, as it was not based upon violation of an order relating to the timing or disclosure of Ms. Rogers's surgery, and on the grounds that any such order would have been unlawful. They further contend that the penalty imposed is contrary to the mandatory provisions of La. C.C.P. art. 227 and La. R.S. 13:4611.

STANDARD OF REVIEW
A trial court is vested with great discretion in determining whether a party should be held in contempt, and its decision will only be reversed when the appellate court discerns an abuse of that discretion. de Nunez v. Bartels, 97-1384, p. 13 (La.App. 1st Cir.9/9/98), 727 So.2d 463, 469-70. But while it is true that the trial court's ultimate decision to hold a party or attorney in contempt of court is subject to review under the abuse of discretion standard, the trial court's predicate factual determinations are reviewed under the manifest error standard in the case of a civil contempt, and under the standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the case of a criminal contempt. See In re Milkovich, 493 So.2d 1186, 1189 (La.1986). Therefore, in the case of a criminal contempt, if the facts which constitute the contemptuous conduct are proven beyond a reasonable doubt, then the trial court has great discretion in determining whether to impose a judgment of contempt based upon its factual determinations. With regard to the sufficiency of the trial court's factual findings, the standard of review for a criminal contempt is whether, after reviewing the evidence in the light most favorable to the mover, any rational trier of fact could have found the essential elements of the criminal contempt beyond a reasonable doubt. Id.[3]

ANALYSIS
Authority to punish for contempt of court falls within the inherent power of the court to aid in the exercise of its jurisdiction and to enforce its lawful orders. de Nunez, 97-1384 at p. 13, 727 So.2d *946 at 470. A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. La. C.C.P. art. 221. Proceedings for contempt must be strictly construed, and the policy of our law does not favor extending their scope. Estate of Graham v. Levy, 93-0636R, 93-0134, p. 4 (La.App. 1st Cir.4/8/94), 636 So.2d 287, 290, writ denied, 94-1202 (La.7/1/94), 639 So.2d 1167.
The provisions of La. C.C.P. art. 224 relevant for our present purposes are the following:
A constructive contempt of court is any contempt other than a direct one.
Any of the following acts constitutes a constructive contempt of court:
. . .
(2) Willful disobedience of any lawful judgment, order, mandate, writ, or process of the court;
. . .
(4) Deceit or abuse of the process or procedure of the court by a party to an action or proceeding, or by his attorney;
. . .
(10) Any other act or omission punishable by law as a contempt of court, or intended to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority, and which is not a direct contempt. (Emphasis supplied.)
The defendants summarized the factual grounds of their motion for contempt as Mr. Simmons's failure "to cooperate or agree to amicably resolve litigation issues with opposing counsel" and his violation of a prior assurance made in the course of a telephone status conference to inform the defendants of the scheduled surgery after he learned of it. The defendants characterized the foregoing as "contumacious and insolent behavior" constituting direct contempt of court under La. C.C.P. art. 222. They also charged "a pattern of willful misrepresentation and deceit that interferes with the orderly administration of justice, impairs the dignity of the [c]ourt, and is indicative of a lack of respect for opposing counsel and for the authority of the [c]ourt," constituting constructive contempt under La. C.C.P. art. 224. In its oral reasons for judgment, the trial court expressly based its ruling upon the provisions of La. C.C.P. art. 224(10), stating as follows:
All right. Well, I know we talked about this at the hearing I had back in November. And the reason that I didn't ever rule on the issue of postponing the surgery was because it was the Court's understanding that there was no imminent surgery that was going to be performed. It is amazing to me that Mr. Simmons can come in here today and tell the Court that he [did] not know that the defendants wanted to have the [examination] before any further surgery was done. It's just amazing.
And even though there was no court order, I believe that an attorney who has that knowledge has the duty to communicate to the other side when he found out that the facts that the Court assumed when I issued my judgment were no longer applicable.
I'm not going to find Mrs. Rogers in contempt of court because I think she probably relied on Mr. Simmons' advise [sic] or comments to her. However, I do find that I believe Mr. Simmons is in constructive contempt of the court, under Article 224, Subsection (10.)
I'm ordering him to pay $5000 in attorney fees plus costs. I'm further ordering that the [examination] be scheduled *947 today before you-all leave the courthouse. (Emphasis supplied.)
The trial court expressly precluded La. C.C.P. art. 224(2) and implicitly precluded La. C.C.P. art. 224(4) as grounds for its judgment. Strictly construing its ruling, as we are required to do, we must conclude that the finding of criminal contempt was not based upon either a violation of a court order or deceit or abuse of process.
A contempt proceeding incidental to a civil action is considered to be a civil matter if its purpose is to force compliance with a court order, but is treated as a criminal matter if its purpose is to punish disobedience of a court order. State in the Interest of R.J.S., 493 So.2d 1199, 1202 (La.1986). In other words, an unconditional penalty, one that the party held in contempt cannot affect or end, is criminal in nature. A conditional penalty, which compels the party to comply with the court's order to end the penalty, is a civil one. Hicks ex rel. Feiock v. Feiock, 485 U.S. 624, 633, 108 S.Ct. 1423, 1430, 99 L.Ed.2d 721 (1988). If the penalty imposed is criminal in nature, the burden of proof of the elements of contempt must be beyond a reasonable doubt. Hicks, 485 U.S. at 632, 108 S.Ct. at 1429-30.
If the primary purpose of the contempt judgment is punitive rather than coercive, the same criminal burden of proof should logically apply even if there was no technical violation of a specific court order. The defendants contend that the judgment of contempt at issue was civil in nature, because it did not impose a "criminal sentence," i.e., incarceration, but rather a "remedial" fine in the form of an attorney fees award, and because it arose in the context of civil litigation. We disagree.
Here, the defendants' obvious purpose in seeking to hold Ms. Rogers and her counsel in contempt was to punish them for their conduct in failing to disclose the scheduling of surgery prior to the psychological examination, thereby depriving the defendants of the supposed benefit of that examination prior to surgery. The defendants were therefore required to prove every fact necessary to support the charge of constructive contempt of court beyond a reasonable doubt. The trial court record and the defendants' appellate briefs are replete with references to the importance of their securing the psychological examination prior to any surgery. The defendants contend that the timing of the surgery impaired the value of any subsequent psychological examination and essentially amounts to spoliation of evidence. But noticeably absent from the record is any proof supporting these contentions, as opposed to mere supposition.[4]
The purpose of charging and convicting a party for criminal contempt is vindication of the public interest by punishment of contemptuous conduct. Billiot v. Billiot, 01-1298, p. 5 (La.1/25/02), 805 So.2d 1170, 1174. In a case involving willful disobedience of a court order, the act or omission constituting criminal contempt must be done with an intent to defy the authority of the court. Id. To uphold the conviction, we must determine that the evidence, viewed in the light most favorable to the defendants, is sufficient for a rational trier of fact to conclude beyond a reasonable doubt that every element of the contempt charge was proven. Id.
As the plaintiffs correctly observe, La. C.C.P. art. 1464 by its terms authorizes a court to order a party's examination by "a licensed clinical psychologist who is not a physician" only upon a showing of "good *948 cause" and "provided the party has given notice of intention to use such an expert." (Emphasis supplied.) The record does not reflect that Ms. Rogers ever gave any notice or suggestion that she intended to use a licensed clinical psychologist as an expert at trial; however, the defendants equate the profession of Ms. Rogers's treating psychiatrist with that of a licensed clinical psychologist and emphasize that she has clearly placed her mental condition in controversy. We cannot agree that the defendants were entitled to the order compelling the examination by Dr. Bianchini, as opposed to a psychiatrist. But as the validity of that order was evidently not challenged by means of a supervisory writ application, the issue of whether the trial court erred in issuing the order compelling the examination is not directly before us.[5] Thus, the order must be considered valid for our present purposes, but the issue of its legal basis has indirect relevance to the issue before us.
It is uncontested that both Ms. Rogers and Mr. Simmons were acutely aware of the defendants' interest in any anticipated surgery and in securing the requested psychological evaluation prior to any surgery. But if a party cannot be held in contempt for failure to obey an order to submit to a mental examination, it stands to reason that the party's attorney should not be held in contempt for simply failing to disclose information relevant to the timing of such an examination, where neither that order nor any other order requires that disclosure. See La. C.C.P. art. 1471(4). If the actions reflected in the hearing testimony rise to the level of contempt, it would seem that Ms. Rogers was more blameworthy than her counsel, since it is undisputed that she expressly directed Mr. Simmons to withhold disclosure of the imminent surgery.[6] There being no direct order requiring such disclosure, any legally enforceable duty to disclose the scheduling of the surgery must derive from some other source. Defendants point to no other positive basis for imposition of such a duty here, other than the purported promise by Mr. Simmons during the telephone status conference of November 22, 2004 to notify Mississippi Farm Bureau's counsel if surgery was scheduled before Dr. Bianchini's scheduled evaluation.
Acting upon the trial court's suggestion in its order denying their motion for a status conference, defendants opted to file a motion for contempt, rather than a motion to compel discovery under La. C.C.P. art. 1469 or for discovery sanctions under La. C.C.P. art. 1471. However, the relief sought by the defendants and granted by the trial court, payment of the defendants' *949 attorney fees and costs associated with the attempts to schedule the examination, is not authorized under La. C.C.P. art. 227 and La. R.S. 13:4611(1)(d), although available under the above discovery articles.[7] The fact that the trial court also ordered that the psychological evaluation be scheduled by the parties that day underscores the character of the relief sought as enforcement of discovery. For a judgment of contempt to be rendered as a sanction under La. C.C.P. art. 1471, the offending party must fail to "obey an order to provide or permit discovery." (Emphasis supplied.)
With regard to the timing of the psychological examination relative to surgery, there is no suggestion in the record that Mississippi Farm Bureau sought any relief short of an actual injunction or order delaying any surgery, as, for example, an order requiring notice of scheduling of surgery and submission to psychological evaluation prior to the date of surgery, in default of which evidence relating to such surgery would be excluded at trial. See La. C.C.P. art. 1471(2). The fact that the trial court denied the motion to postpone the surgery as moot, based upon Mr. Simmons's representations at the hearing, cannot by itself serve as the basis for imposition of an affirmative duty to inform the defendants of the subsequent change in circumstances. A finding of such a duty would presuppose the authority of the trial court to enjoin or delay the surgery, authority which we conclude it did not legally possess, at least under these circumstances.[8]
In light of all the circumstances, and based upon our review of the applicable law, we view Mr. Simmons's conduct as a lapse in professionalism rather than an act of constructive contempt. While it seems obvious that Mr. Simmons's actions, rightly or wrongly, were intended to obstruct or interfere with Mississippi Farm Bureau's attempt to secure the psychological evaluation, we cannot conclude that such actions were intended to "obstruct or interfere with the orderly administration of justice" by the trial court. See La. C.C.P. art. 224(10).
In so holding, however, we expressly state that we do not countenance the apparent pattern of obstructive tactics and lack of cooperation he and his client employed *950 in the discovery phase of this litigation. Certainly, if the defendants had obtained an order compelling a timely answer or an expedited supplemented answer to an interrogatory specifically directed to the issue of scheduling of surgery, the result we reach herein might be quite different.[9] And we do not hold that the violation of a court order is a necessary element in every case of constructive contempt; the plain language of La. C.C.P. art. 224 does not require that. We simply hold that the defendants did not prove beyond a reasonable doubt: (1) the existence of a legal duty on Mr. Simmons's part to inform them, over his client's express objection, or the trial court of the impending surgery, and (2) that his failure to do so under the circumstances was intended to defy the authority of the trial court, or to impair its dignity or respect for its authority.
The judgment granting the defendants' joint motion for contempt and ordering the appellant, M. Reggie Simmons, to pay $5,000.00 attorney fees plus court costs associated with the filing and prosecution of the motion is accordingly reversed. All costs of this appeal are assessed to the defendants, Mississippi Farm Bureau Casualty Insurance Company and Louisiana Farm Bureau Casualty Insurance Company.
REVERSED.
NOTES
[1] The trial court's judgment reflecting its rulings from the November 10, 2004 hearing and telephone status conference of November 22, 2004 was signed on January 26, 2005.
[2] In its appellate brief, Mississippi Farm Bureau seeks an increase in the award of attorney fees to $10,000.00. Because it did not file its own appeal or an answer to the appeal of the plaintiffs and Mr. Simmons, we have no authority to consider that request. See La. C.C.P. art. 2133(A).
[3] In practical application, the standard of review of criminal contempt is essentially the same as the manifest error standard. See Billiot v. Billiot, 01-1298, pp. 5-6 (La.1/25/02), 805 So.2d 1170, 1174 ("There were two permissible views of the evidence in this case, and the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. [Citation omitted.] Nevertheless, we find that the trial court erred by holding OCS in contempt in this case, even based on the facts as the trial court found them.").
[4] See n. 8, infra.
[5] During the course of the hearing and in its written reasons for judgment on the motion to compel the examination, the trial court interpreted the quoted language to refer to the party requesting the examination as the party required to afford notice of such intent. This is an erroneous interpretation of the plain language of the article. This court recently granted a supervisory writ in another case on this identical issue. There, we reversed a trial court judgment compelling the plaintiff to submit to an "independent psychological evaluation" because the plaintiff had not "given notice of his intent to use a clinical psychologist as an expert." Arnold v. Louisiana Farm Bureau Mut. Ins. Co., 2006 CW 2044 (La.App. 1st Cir.12/21/06) (unpublished writ disposition).
[6] Ms. Rogers testified that she asked Mr. Simmons if there was an order requiring disclosure of the scheduled surgery to the defendants, and upon being advised there was no such order, she instructed him that they "would not say anything because [she] did not want anything to come between [her] getting well." See Louisiana State Bar Association Articles of Incorporation, Art. 16, Rules of Professional Conduct, Rule 1.6(a). But cf. Art. 16, Rules 3.3(a)(1), (c) and 3.4(a).
[7] Louisiana Code of Civil Procedure article 227 limits the punishment for contempt to that set forth in La. R.S. 13:4611. Punishment for the constructive contempt at issue is limited to "a fine of not more than five hundred dollars, or imprisonment for not more than three months, or both." La. R.S. 13:4611(1)(d). Fines for contempt of court are collectable by the sheriff and payable to the court or designated officials, rather than opposing litigants. See La. C.C.P. art. 330.
[8] See Viator v. Sonnier, 355 So.2d 1091, 1093 (La.App. 3rd Cir.1978) ("The discovery articles do not authorize the court to interfere with the medical decision of when surgery should be performed. Under these circumstances, we do not feel that it was within the discretion of the trial judge to issue an order that could affect the time at which surgery should be performed."). Additionally, it seems only reasonable that the trial court, before imposing a judgment of contempt of court upon Mr. Simmons, should have made a determination that the timing of the psychological evaluation prior to orthopedic or neurological surgery was in fact crucial or at least important for purposes of its relevancy and the accuracy of any findings, opinions, or conclusions. No testimony or other evidence on this particular point was offered by the defendants at either the hearing on the motion to compel the examination or the hearing on the motion for contempt. Although Dr. Bianchini did testify at the former hearing regarding the role of psychological testing in facilitating the determination of whether patients are suitable surgical candidates, he was not asked to address the converse issue: the effect of surgery upon a subsequent psychological assessment.
[9] Louisiana Code of Civil Procedure article 1458 generally requires the party to whom interrogatories are propounded to serve an answer or objection within fifteen days after service, but also expressly provides that "[t]he court may allow a shorter or longer time." (Emphasis supplied.) Although a motion seeking additional time to answer interrogatories is common, a motion to limit an opposing party's time to answer interrogatories is also available to a litigant. Louisiana Code of Civil Procedure article 1428(3) also provides that "[a] duty to supplement [discovery] responses may be imposed by order of the court . . . or at any time prior to trial through new requests for supplementation of prior responses." (Emphasis supplied.) Reading these provisions together, it is obvious that a trial court has the authority to order a party to expeditiously answer an interrogatory after service or to expeditiously supplement a prior answer after acquiring knowledge imposing a duty to "seasonably" supplement his answer. See La. C.C.P. art. 1428(1), (2). See also Viator, 355 So.2d at 1094 n. 2. Unjustified violation of such an order might then constitute grounds for a finding of contempt under La. C.C.P. art. 1471(4) and assessment of "reasonable expenses, including attorney's fees, caused by the failure" under the last paragraph of art. 1471.