NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 CA 1115

KATHERINE REZNIK BENOIT

VERSUS

BENJAMIN PAUL BENOIT

*Judgment Rendered:*      MAY 16 2024

* * * * * * * *

Appealed from the Family Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. F215758, Division C

The Honorable Ronald D. Cox, Judge *Pro Tempore*

* * * * * * * *

| | |
|---|---|
| Katherine Reznik Benoit<br>Baton Rouge, Louisiana | Plaintiff/Appellant<br>*Pro Se* |
| Harley M. Brown<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellee<br>Benjamin Paul Benoit |

* * * * * * * *

BEFORE: THERIOT, PENZATO, AND WOLFE, JJ.

**THERIOT, J.**

Katherine Reznik Benoit appeals the January 9, 2023 judgment of the Family Court, East Baton Rouge Parish, which pertinently denied her motion to strike Benjamin Paul Benoit's rule for contempt and further adjudged her to be in contempt. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY[1]

Benjamin Paul Benoit and Katherine Reznik Benoit entered into a covenant marriage on October 5, 2003. One child was born of their marriage. On November 27, 2018, Ms. Benoit filed a petition for separation based on La. R.S. 9:307(B)(6), which provides for separation from bed and board in a covenant marriage "[o]n account of habitual intemperance of the other spouse, or excesses, cruel treatment, or outrages of the other spouse, if such habitual intemperance, or such ill-treatment is of such a nature as to render their living together insupportable." Ms. Benoit also sought a termination of the community property regime.

In response, Mr. Benoit filed an answer and reconventional demand seeking, among other things, a separation from bed and board, the termination of the community, and – after all delays and due proceedings – a divorce and a partition of the community of acquets and gains previously existing between him and Ms. Benoit.

The trial court signed a consent judgment on April 30, 2019 wherein the parties stipulated that, in accordance with the facts alleged in Ms. Benoit's petition, Mr. Benoit had exhibited cruel treatment and outrages toward Ms. Benoit that rendered the parties living together insupportable and that they had undergone the requisite counseling. The consent judgment further provided for a separation from

---

[1] The following rendition of facts and procedural history comes in part from a prior appeal. See *Benoit v. Benoit*, 2021-0864 (La. App. 1 Cir. 4/4/22), 341 So.3d 719, 723, writ not considered, 2022-00951 (La. 10/4/22), 347 So.3d 890.

2

bed and board in accordance with the covenant marriage statutes and, pursuant to La. C.C. art. 2374(C), terminated the parties' community property regime retroactive to November 27, 2018.

On October 30, 2020, Mr. Benoit filed a petition for divorce. A judgment of divorce was rendered and signed on December 15, 2020. However, prior to the divorce proceedings, based upon the pending request to partition community property, the parties were ordered to file sworn detailed descriptive lists of assets and liabilities of the community. After the parties filed their respective lists and amendments thereto, a trial to partition the community was held on March 13, 2020. The partition trial involved several relevant legal issues, including the allocation of a Roth IRA and the allocation and valuation of the Benoits' community business, Eagle Lawn Service, L.L.C. ("Eagle"). See Benoit, 341 So.3d at 724.

On April 16, 2020, the trial court signed a judgment ("the community property judgment") that allocated the Roth IRA, valued at approximately $11,553.91, to Mr. Benoit. See Benoit, 341 So.3d at 724. In its written reasons, the trial court explained that the Roth IRA was Mr. Benoit's separate property because it had been purchased with separate funds awarded to him in a personal injury settlement. The trial court ordered Ms. Benoit to execute any and all documents necessary to transfer the Roth IRA into Mr. Benoit's name.

Regarding Eagle, the trial court noted that the limited liability company would not exist but for Mr. Benoit's labor or efforts and allocated same to Mr. Benoit. The trial court valued Eagle at $0.00, explaining in written reasons that the valuation was based in part on a previous bankruptcy filing wherein the parties attested that Eagle was worth $0.00. The trial court noted that Mr. Benoit had used separate funds to purchase over $40,000.00 worth of equipment for Eagle, but the trial court could not attribute a value to any equipment owned by Eagle because of

3

the parties' testimony that the equipment was later stolen.  See *Benoit*, 341 So.3d at 733-34.

On April 14, 2022, Mr. Benoit (in proper person) filed a rule for contempt wherein he alleged that Ms. Benoit refused to release the Roth IRA to him in violation of the community property judgment.  He also sought the return of a "mini track front end loader" (henceforth referred to as "the Dingo") which was owned by Eagle but disposed of by Ms. Benoit.  He requested that Ms. Benoit be found in contempt and ordered to pay attorney's fees and court costs.

On November 10, 2022, Ms. Benoit filed a motion to strike Mr. Benoit's April 14, 2022 rule for contempt.  She argued that Mr. Benoit violated La. C.C.P. art. 863 by filing and signing his April 14, 2022 rule for contempt himself despite having counsel of record.

On December 7, 2022, the parties appeared for a hearing on several issues, including Mr. Benoit's April 14, 2022 rule for contempt and Ms. Benoit's November 10, 2022 motion to strike.  On January 9, 2023, the trial court signed a judgment which, in pertinent part, found Ms. Benoit guilty of contempt of court for failing to execute the necessary documents to effectuate the transfer of the Roth IRA to Mr. Benoit.  The trial court further found Ms. Benoit to be guilty of contempt of court for selling "lawn service equipment" that had been previously awarded to Mr. Benoit.

For each finding of contempt, the trial court sentenced Ms. Benoit to serve thirty days in parish prison, but suspended the sentence on the condition that there be no further violations of the orders of the court.[2]  The trial court cast Ms. Benoit with court costs and ordered her to reimburse Mr. Benoit in the amounts of $11,850.88 for her withdrawal and transfer of funds from the Roth IRA and

---

[2] The trial court also found Mr. Benoit to be in contempt for failing to pay interim spousal support and sentenced him to thirty days in parish prison, which was suspended as long as there are no further violations of the orders of the court. This finding is not at issue on appeal.

4

$7,000.00 for her sale of the Dingo. Lastly, the trial court denied Ms. Benoit's November 10, 2022 motion to strike.

This appeal by Ms. Benoit follows.

## ASSIGNMENTS OF ERROR

Ms. Benoit assigns the following as error:

(1) The trial court erred as a matter of law, necessitating de novo review, by misapplying La. C.C.P. art. 863 when denying Ms. Benoit's *Motion for Rule Nisi to Strike Defendant's Rule for Contempt, Attorney Fees and Return of Property Pursuant to La. C.C.P. art. 863C*, and failing to adhere to the mandate within.

(2) The trial court erred as a matter of law, necessitating de novo review, when sentencing Ms. Benoit to serve 30 days in parish prison for disposing of property that had previously been awarded to her by the trial court within their April 16, 2020 community property judgment and for ordering Ms. Benoit to reimburse Mr. Benoit seven thousand dollars ($7,000.00) for a Dingo that their community property judgment had already awarded to Ms. Benoit and that had also been valued at zero dollars ($0.00).

(3) [T]he Family Court does not have the subject matter jurisdiction over the disposition of the Roth IRA that was paid for by Ms. Benoit's separate funds, and that the trial court abused its discretion when finding Ms. Benoit in criminal contempt and sentencing her to thirty (30) days in parish prison for using the funds to provide for her support.

## DISCUSSION

Assignment of Error #1

Ms. Benoit argues that the trial court erred in denying her motion to strike. She specifically argues that Mr. Benoit filed his rule for contempt (and a subsequent motion to reset) in proper person despite being "actively represented" by counsel. She asserts that neither his previous attorney nor his current attorney signed the pleading at issue. Ms. Benoit argues that the failure of Mr. Benoit's attorney to sign the rule for contempt violates La. C.C.P. art. 863 and that the trial court thus erred in denying her related motion to strike.

5

Louisiana Code of Civil Procedure article 863 provides in pertinent part:

A. Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose physical address and email address for service of process shall be stated. A party who is not represented by an attorney shall sign his pleading and state his physical address and email address, if he has an email address, for service of process. If mail is not received at the physical address for service of process, a designated mailing address shall also be provided.

B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading, and that to the best of his knowledge, information, and belief formed after reasonable inquiry, he certifies all of the following:

(1) The pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

(2) Each claim, defense, or other legal assertion in the pleading is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law.

(3) Each allegation or other factual assertion in the pleading has evidentiary support or, for a specifically identified allegation or factual assertion, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(4) Each denial in the pleading of a factual assertion is warranted by the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

C. If a pleading is not signed, it shall be stricken unless promptly signed after the omission is called to the attention of the pleader. (Emphasis added.)

Mr. Benoit filed the rule for contempt in proper person. Mr. Benoit continued to act in proper person after this filing, signing a document acknowledging receipt of the trial court's case management schedule in July 2022. Because Mr. Benoit filed the rule for contempt in proper person, La. C.C.P. art. 863(A) simply required him to sign the pleading and state his physical address (and email address if applicable). Mr. Benoit satisfied those requirements. This assignment of error lacks merit.

6

Assignment of Error #2

Ms. Benoit next argues that the trial court erred by sentencing her to serve thirty days in parish prison for disposing of property that had "previously been awarded to her" in the community property judgment. A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. La. C.C.P. art. 221. Willful disobedience of any lawful judgment, order, mandate, writ, or process of the court constitutes a constructive contempt of court. La. C.C.P. art. 224(2); *Hagen v. Hagen*, 2023-0242 (La. App. 1 Cir. 9/15/23), 376 So.3d 159, 166.

To find a person guilty of constructive contempt, the court must find that they violated the order of the court intentionally, knowingly, and purposely, without justifiable excuse. If the person charged with contempt is found guilty, the court shall render an order reciting the facts constituting the contempt, adjudging the person charged with contempt guilty thereof, and specifying the punishment imposed. See La. C.C.P. art. 225(B); *Hagen*, 376 So.3d at 166.

A trial court is vested with great discretion in determining whether a party should be held in contempt, and its decision will only be reversed when the appellate court discerns an abuse of that discretion. While it is true that the trial court's ultimate decision to hold a party or attorney in contempt of court is subject to review under the abuse of discretion standard, the trial court's predicate factual determinations are reviewed under the standard of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the case of a criminal contempt. *Rogers v. Dickens*, 2006-0898 (La. App. 1 Cir. 2/9/07), 959 So.2d 940, 945. Therefore, in the case of a criminal contempt, if the facts which constitute the contemptuous conduct are proven beyond a reasonable doubt, the trial court has great discretion in determining whether to impose a judgment of contempt based upon its factual determinations. With regard to the sufficiency of the trial court's

factual findings, the standard of review for a criminal contempt is whether, after reviewing the evidence in the light most favorable to the mover, any rational trier of fact could have found the essential elements of the criminal contempt beyond a reasonable doubt. *Rogers*, 959 So.2d at 945.

A proceeding for contempt for refusing to obey a court's order is not designed for the benefit of the litigant, though infliction of punishment may inure to the benefit of the mover in the rule. *Schmidt v. Schmidt*, 2018-0202 (La. App. 1 Cir. 1/3/19), 270 So.3d 804, 809. The punishment which a court may impose upon a person adjudged guilty of contempt of court is provided in La. R.S. 13:4611. La. C.C.P. art. 227; *Hagen*, 376 So.3d at 166. Specifically, a trial court may punish constructive contempt for failure to obey a court's order by a fine of not more than five hundred dollars, or imprisonment for not more than three months, or both. La. R.S. 13:4611(1)(d)(i); see also *Anny v. Johnson*, 2021-0568 (La. App. 1 Cir. 8/16/22), 348 So.3d 747, 759, writ granted in part on other grounds and remanded, 2022-01410 (La. 12/6/22), 350 So.3d 866. Moreover, a person found to be in contempt has no right to a suspension of sentence, but, in fact, is the beneficiary of the court's clemency when such a suspended sentence is imposed. *Anny*, 348 So.3d at 760.

In the rule for contempt, Mr. Benoit sought the return of the Dingo, which he asserted was owned by Eagle but had been disposed of by Ms. Benoit. Ms. Benoit claimed in response that the community property judgment allocated to her any and all movables or vehicles in her possession and that ownership of the Dingo was thus allocated to her.

At the December 7, 2022 hearing, Mr. Benoit produced evidence of an October 11, 2021 text message exchange between himself and Ms. Benoit. In the text messages, Mr. Benoit asked Ms. Benoit if she sold the Dingo. She responded that the Dingo was being repaired. Ms. Benoit then claimed that the Dingo

belonged to her because it had been in her possession at the time of the community property division and offered to barter the Dingo's use "when it's fixed to offset their cost, time and labor to fix it." She told Mr. Benoit that he had "no proof" that the Dingo belonged to him.

At the December 7, 2022 hearing, Ms. Benoit testified that the Dingo, which had previously been exclusively used by Eagle for its business purposes, sat rusted and broken-down in the driveway of her separate home at the time of the community property division. She testified that she did not personally use the Dingo and claimed to have repeatedly asked Mr. Benoit to remove it.[3] Ms. Benoit then testified that she sold the Dingo to a neighbor who may have been named "David" for $3,000.00. When asked to confirm that the neighbor had paid $3,000.00 for "broken down rusted-out equipment," Ms. Benoit answered in the affirmative. It is unclear why the Dingo, which Ms. Benoit testified was repaired in October 2021, would have been "broken down" or "rusted-out" at the time of a sale that must have taken place prior to the December 7, 2022 hearing.

Having reviewed the evidence presented at the contempt hearing, it is clear that Eagle, not Ms. Benoit, owned the Dingo.[4] The community property judgment allocated 100% ownership interest in Eagle to Mr. Benoit. This Court affirmed that allocation. See Benoit, 341 So.3d at 734. Ms. Benoit testified that the Dingo had been used by Eagle for business purposes and further testified that she asked Mr. Benoit to remove the Dingo many times. Despite the trial court's allocation and this Court's affirmance of same, Ms. Benoit chose to sell the Dingo. Considering that Ms. Benoit sold property that belonged to Eagle, which was

---

[3] Ms. Benoit's alleged willingness to allow Mr. Benoit to remove the Dingo directly contradicts her repeated assertions that the Dingo was "awarded to her."

[4] Eagle is a juridical person with the capacity to contract and own property. See La. C.C. arts. 24 and 1918.

allocated to Mr. Benoit, we find that the trial court did not abuse its great discretion in holding Ms. Benoit in criminal contempt.

In a related argument, Ms. Benoit asserts that the trial court erred in ordering her to reimburse Mr. Benoit for equipment that had been valued at $0.00. However, the trial court specifically explained in written reasons that it could not attribute a value to Eagle's equipment because the parties testified that the equipment had been stolen. The trial court thus did not value the Dingo at $0.00 – it valued Eagle as a limited liability company at $0.00. As explained by the trial court in written reasons, Mr. Benoit introduced evidence of similar lawn equipment valued between $6,000.00 and $8,000.00.

Accordingly, we find no abuse of discretion in the trial court's ruling ordering Ms. Benoit to reimburse Mr. Benoit in the amount of $7,000.00 for the sale of Eagle's Dingo.

This assignment of error lacks merit.

Assignment of Error #3

Ms. Benoit argues that the trial court, as a domestic division, does not have subject matter jurisdiction over the disposition of the Roth IRA that was "paid for by Ms. Benoit's separate funds[.]" The Roth IRA (valued in the approximate amount of $11,553.91) was awarded to Mr. Benoit in the community property judgment, which was rendered after the partition trial. The community property judgment further ordered Ms. Benoit to execute any and all documents necessary to transfer the Roth IRA into Mr. Benoit's name. Ms. Benoit appealed the community property judgment on other grounds, but did not assign as error the trial court's allocation of the Roth IRA to Mr. Benoit.[5]

---

[5] Ms. Benoit did appeal the trial court's classification of all of the proceeds from Mr. Benoit's personal injury lawsuit as his separate property. This Court affirmed that classification. See *Benoit*, 341 So.3d at 732-33.

At the contempt hearing, Ms. Benoit admitted to transferring the funds from the Roth IRA to her own bank account at USAA, an out-of-state bank. She acknowledged that she did so despite the trial court's allocation of the Roth IRA to Mr. Benoit. She further admitted to spending the funds.

The Family Court, East Baton Rouge Parish, which has presided over this case since its inception, has exclusive jurisdiction over "[a]ll actions for divorce . . . as well as of all matters incidental" to divorce, as well as "[a]ll actions between spouses or former spouses for partition of community property and property acquired pursuant to a matrimonial regime." See La. R.S. 13:1401(A)(1) and(A)(2)(a). The instant matter clearly falls under the Family Court's jurisdiction. Ms. Benoit's jurisdictional argument is a blatant attempt to relitigate subject matters already decided by this Court; namely, the classification and subsequent allocation of the funds within the Roth IRA.

Finally, Ms. Benoit argues that the trial court abused its discretion when finding her in criminal contempt and sentencing her to thirty (30) days in parish prison for using the funds from the Roth IRA to provide for her support. She asserts that she "should have been provided her Due Process protections by the trial court" and "should have been reminded of her Constitutional Rights such as her right to be represented by counsel and right not to engage in self-incrimination."

Ms. Benoit is a Louisiana licensed attorney. She testified that she was aware of her rights against self-incrimination. She further agreed that the court could punish her with jail time if she incriminated herself. This assignment of error lacks merit.

## DECREE

For the above and foregoing reasons, the January 9, 2023 judgment, which was rendered by the Family Court, East Baton Rouge Parish, is affirmed. Costs of this appeal are assessed to Katherine Reznik Benoit.[6]

**AFFIRMED.**

---

[6] In his brief, Mr. Benoit requests that Ms. Benoit be sanctioned for filing a frivolous appeal, as well as for misrepresenting the history of the case, misrepresenting rulings of the courts, and filing repetitive claims that have already been decided. Although La. C.C.P. art. 2164 provides for damages for frivolous appeals, such damages are not proper where the party does not appeal or answer the appeal pursuant to La. C.C.P. art. 2133. *Fontenot v. State, Dep't of Pub. Safety & Corr.*, 92-1874 (La. App. 1 Cir. 10/15/93); 625 So.2d 1122, 1125; see also *Lockett v. UV Ins. Risk Retention Grp., Inc.*, 15-166 (La. App. 5 Cir. 11/19/15), 180 So.3d 557, 577. An appellee shall not be obligated to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. (Emphasis added.) La. C.C.P. art. 2133. Because Mr. Benoit did not appeal or file an answer, he cannot recover damages for frivolous appeal. See *Fontenot*, 625 So.2d at 1125.