805 So.2d 1170 (2002)
Pamela McWilliams BILLIOT
v.
Joseph B. BILLIOT, Jr.
No. 2001-C-1298.
Supreme Court of Louisiana.
January 25, 2002.
*1171 Steven L. Mayer, Baton Rouge, Counsel for Applicant.
Pamela M. Billiot, in Proper Person.
Carl A. Chauvin, Golden Meadow, L.G. LaPlante, Jr., Cut Off, Stanley L. Perry, Galliano, Counsel for Respondent.
KIMBALL, J.[*]
In this case, the Louisiana Department of Social Services, Office of Community Services (OCS) was held in contempt of court for willfully disobeying the trial court's custody order. OCS appealed, and we granted certiorari to determine whether this was an appropriate use of contempt power. For the following reasons, we conclude *1172 that the trial court abused its discretion by holding OCS in contempt, and that OCS's actions did not amount to willful disobedience of the court's order. We therefore reverse the order holding OCS in contempt of court.

FACTS AND PROCEDURAL HISTORY
J.B. and P.B. are the parents of a minor child, A.B.[1] In 1988, P.B. instituted a civil divorce proceeding against J.B. entitled Billiot v. Billiot, docket number 62793. The trial court entered a judgment in that case on January 13, 1989 which awarded J.B. and P.B. joint custody of A.B., with P.B. as the domiciliary parent. Thereafter, on May 2, 1995, the trial court entered another judgment in the civil divorce proceeding maintaining joint custody, but naming J.B. as the domiciliary parent. Four years later, on March 10, 1999, OCS received a report that A.B. had possibly been physically abused. A child protection investigator for OCS responded by conducting a preliminary "child in need of care" (CINC) investigation. As a result of the preliminary investigation, A.B. was removed from J.B.'s custody and sent to live with P.B.
P.B. and J.B. then both filed motions for change of custody in the original civil proceeding, docket number 62793, each requesting sole custody of A.B. Along with his motion for change of custody, J.B. also filed a rule to show cause why OCS should not be held in contempt of court for depriving him of custody without proper authority of the court. J.B. alleged in his contempt rule that OCS did not follow the requirements of the Children's Code prior to taking A.B. into custody and placing her in the custody of P.B. and continuing that arrangement. He argued that OCS neither obtained an instanter order pursuant to La. Ch.C. art. 621[2], nor was a continued custody hearing scheduled pursuant to La. Ch.C. art. 624.[3]
The trial court held a civil hearing in the divorce proceeding on May 7 and May 10, 1999 to again determine the custody of A.B. and whether OCS should be held in contempt. At the hearing, the OCS investigator testified that J.B. agreed to allow A.B. to stay with P.B., and there was therefore no need for OCS to seek an instanter order from a judge. The investigator also stated that this conversation with J.B. took place in the presence of an OCS intern, but the intern testified that the investigator and J.B. spoke alone outside, and that she was unable to confirm what was said. J.B. testified that the OCS investigator never asked him if he would agree to allow A.B. to stay with P.B., and that he did not so agree. Rather, he stated that the OCS investigator told him and his parents that she was going to take A.B. from him and put her in P.B.'s custody. J.B.'s mother, F.B., also testified that the *1173 investigator informed them that she was going to place A.B. with P.B., and that J.B. never agreed to the placement. On the other hand, P.B.'s aunt, A.M., testified that the OCS investigator told her that J.B. had agreed to the placement and then asked her if she could pick up A.B. and bring her to P.B.
Following this testimony and that of seven other witnesses, the trial court found that A.B. did not tell the truth about being abused. It also found that OCS was aware of the court's custody decree awarding joint custody with J.B. as the domiciliary parent. On the issue of whether J.B. agreed to allow A.B. to be placed with P.B., the court resolved credibility issues in favor of J.B. It found that J.B. did not agree, but rather that the OCS investigator simply informed J.B. that he would give A.B. to P.B. without considering what J.B. had to say and without telephoning the duty judge to obtain an emergency order. As a result, the trial court concluded that OCS willfully disobeyed its order awarding joint custody with J.B. as the domiciliary parent. The trial court maintained the prior joint custody award, held OCS in contempt, and cast OCS with the costs of the proceedings. In a penalty hearing held on June 4, 1999, the trial court assessed OCS with a fine of $500.
OCS appealed to the first circuit, which affirmed the holding of the trial court. The court of appeal reasoned that OCS could be charged with contempt, in part because the law does not limit contempt rules to parties. The court of appeal concluded that the factual findings of the trial court were not manifestly erroneous, and that those facts were sufficient to establish beyond a reasonable doubt that OCS willfully and unjustifiably disobeyed the order of the trial court.
We granted certiorari to consider whether it was appropriate for the trial court to use its contempt power in this case. Billiot v. Billiot, 01-1298 (La.6/29/01), 794 So.2d 804.

LAW AND ANALYSIS
OCS contends that the evidence in this case is insufficient to prove beyond a reasonable doubt the elements of contempt of court for willful disobedience of a court order. In particular, OCS argues that there was no specific order directed to OCS, OCS did not intend to defy the authority of the trial court, and the trial court's use of its contempt power in this case was inappropriate.
The Louisiana Code of Civil Procedure defines contempt of court as "any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." La. C.C.P. art. 221. OCS was convicted of willful disobedience of a court order, which constitutes constructive contempt of court. La. C.C.P. art. 224(2). A contempt of court proceeding is either criminal or civil, which is determined by what the court primarily seeks to accomplish by imposing sentence. Shillitani v. United States, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622, 627 (1966). In a criminal contempt proceeding, the court seeks to punish a person for disobeying a court order, whereas in a civil contempt proceeding, the court seeks to force a person into compliance with a court order. State in the Interest of R.J.S., 493 So.2d 1199, 1202 & n. 7 (La.1986) (citing Shillitani, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966)). In the instant case, the object of the proceeding was to determine whether OCS should be punished for willfully disobeying the court's May 2, 1995 order, and it is therefore a criminal contempt proceeding.
*1174 Criminal contempt is a crime, and the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal proceeding against conviction of a crime except upon proof beyond a reasonable doubt of every fact necessary to constitute the contempt charge. R.J.S., 493 So.2d at 1202. On appellate review of criminal contempt, the reviewing court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude that every element of the contempt charge was proved beyond a reasonable doubt. Id.
Willful disobedience of a court order requires a consciousness of the duty to obey the order and an intent to disregard that duty. Id. at 1203. The purpose of charging and convicting a defendant for criminal contempt is vindication of the public interest by punishment of contemptuous conduct. Id. (citing R. Perkins, Criminal Law 533 (1969)). Therefore, in order to constitute willful disobedience necessary for criminal contempt, the act or refusal to act must be done with an intent to defy the authority of the court. Id. (citing E. Dangel, Contempt § 171 (1939)).
After reviewing the record in this case, we find that it gives no indication that the factual findings of the trial court were manifestly erroneous or clearly wrong. See State ex rel. S.M.W., 00-3277, p. 14 (La.2/21/01), 781 So.2d 1223, 1233. There was a conflict in the testimony regarding whether J.B. agreed to the placement of A.B. with P.B., and in such cases reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though we may feel that our own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). The trial court's credibility determinations must be given great deference because only the fact-finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief of what is said. Id. We find that the trial court's evaluations of credibility and factual inferences were reasonable. There were two permissible views of the evidence in this case, and the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Id.
Nevertheless, we find that the trial court erred by holding OCS in contempt in this case, even based on the facts as the trial court found them. The order at issue was a 1995 custody order issued in the civil divorce proceeding between J.B. and P.B., which in no way involved OCS. Four years later, OCS conducted a CINC investigation, which is a separate juvenile matter under Title VI of the Louisiana Children's Code. J.B. filed his contempt rule in the civil divorce proceeding. The court allowed the contempt rule to go forward in that civil divorce proceeding, which negated the confidentiality that is provided to juveniles in juvenile proceedings. In his contempt rule, J.B. alleged that OCS acted improperly by failing to obtain an instanter order and by failing to schedule a continued custody hearing, as required by the Louisiana Children's Code. Even if OCS handled the CINC matter improperly as J.B. alleged, we fail to see how that impaired the dignity or defied the authority of the court in the civil divorce proceeding. However improper, the record does not establish that OCS's actions were directed toward the trial court in this case, nor does the record indicate that OCS acted in concert with P.B. to thwart the judge's custody order. As such, we find that the trial court's use of its contempt power in this case was erroneous.
As we noted above, the preliminary CINC investigation that OCS conducted in this case is a separate juvenile matter. *1175 We recognize that, in some judicial districts in Louisiana, special juvenile courts exist and have original juvenile jurisdiction. La.Ch.C. art. 302(1).[4] Yet in other judicial districts such as the seventeenth (which was the trial court in the instant case), separate juvenile courts have not been created, and the district courts have original juvenile jurisdiction for the parishes within their district. La. Ch.C. art. 302(2).[5] When exercising its juvenile jurisdiction, a court has exclusive original jurisdiction over CINC proceedings pursuant to Title VI, and over any child alleged to be in need of care and the parents of any such child. La. Ch.C. arts. 303[6], 604[7]. Therefore, a judge of the 17th JDC has jurisdiction over a preliminary CINC investigation pursuant to article 612 of Title VI, such as that conducted by OCS in this case. It is significant in this case, however, that when this judge of the 17th JDC issued its custody order and later held OCS in contempt, he was not exercising juvenile jurisdiction, but rather civil jurisdiction in a family law matter. OCS was not involved in the civil divorce proceeding, its actions were not directed toward the court in the civil divorce proceeding, and it did not act in concert with a party to the civil divorce proceeding to thwart its order. As such, OCS's actions did not impair the dignity of the court or respect for its authority.
We likewise find that OCS's actions in this case did not amount to willful disobedience of the court's May 2, 1995 order. Although this case presents facts that are new to our jurisprudence, two of our past cases provide guidance for our decision today.
In State ex rel. Hero, 36 La. Ann. 352 (1884), the trial court issued an order or writ of sequestration, commanding the sheriff to sequester certain property belonging to a succession and stated to be in the possession of the relator, Andrew Hero. When the sheriff demanded that Hero deliver the property, Hero denied that he possessed the property and failed to make delivery. The trial court found as fact that Hero possessed the property, held him in contempt, and imprisoned him for ten days or until he delivered the property. The supreme court noted that Hero was not involved in the succession proceeding, and that this order merely commanded the sheriff to sequester the property. The court reasoned that the order was not enforceable by contempt against Hero because, in general, the law does not authorize *1176 the enforcement of final judgments, and much less of ex parte orders, directing the delivery of property by process for contempt. The court therefore concluded that the judgment holding Hero in contempt was null and void.
Another case involving an order or writ of sequestration was State ex rel. Duffy & Behan v. Civil Dist. Ct. for Parish of Orleans, 112 La. 182, 36 So. 315 (1904), in which the order commanded the civil sheriff to seize certain property, including $3,000. Claiming that the money was not in their possession or under their control, the relators did not deliver the money to the sheriff and were thereafter held in contempt. The supreme court found that the case was controlled by Hero, which it quoted at length. The court was concerned that a contempt proceeding would become an easy and convenient substitute for the usual legal remedies provided by the then Code of Practice for the enforcement of private rights and obligations of litigants in judicial proceedings. It stated that a contempt proceeding is not designed for the benefit of one or more of the litigants, but its object and purpose is to vindicate the authority and maintain the dignity of the court itself. It declared that, when a specific remedy is provided by the code, it should be followed rather than disregarded through a mere change in the form of proceedings. The court then discussed the fact that the relators had been given no direct orders by the court to deliver money to the sheriff, but rather the order only commanded the sheriff to sequester the money.
We find Hero and Duffy & Behan instructive on the type of action that typifies willful disobedience of a court order. Additionally, as we noted above, State in the Interest of R.J.S. is instructive on the level of proof required for a criminal contempt charge of willful disobedience. To uphold the conviction, we must determine that the evidence, viewed in the light most favorable to the prosecution, is sufficient for a rational trier of fact to conclude beyond a reasonable doubt that every fact necessary to constitute willful disobedience has been proved. R.J.S., 493 So.2d at 1202. Willful disobedience of a court order requires a consciousness of the duty to obey the order and an intent to disregard that duty. Id. at 1203. Also, in order to constitute willful disobedience necessary for criminal contempt, the act or refusal to act must be done with an intent to defy the authority of the court. Id. (citing E. Dangel, Contempt § 171 (1939)). Therefore, facts establishing that OCS was conscious of the duty to obey the order, intended to disregard that duty, and acted with intent to defy the authority of the court must be proved beyond a reasonable doubt.
We conclude that the facts as found by the trial court do not prove beyond a reasonable doubt that OCS acted with intent to defy the authority of the court. The trial court found that OCS was aware of the court's custody decree awarding joint custody with J.B. as the domiciliary parent. The trial court also found that J.B. did not agree to allow A.B. to be placed with P.B. Because J.B. did not agree to the relative placement, it was incumbent upon OCS to seek an instanter order, which is customarily issued by the judge on duty at that time.[8] We find it was not proved beyond a reasonable doubt that OCS's failure to seek an instanter order from a judge in the CINC matter was an act of *1177 defiance directed to the court handling the civil divorce proceeding. Accordingly, OCS's intent was not to defy the authority of the court handling the civil divorce proceeding, and the dignity of that court was not impaired. We therefore conclude that the evidence in the record, when viewed in the light most favorable to the prosecution, is insufficient for a rational trier of fact to conclude that OCS willfully disobeyed the order of the trial court.

DECREE
For the foregoing reasons, the order holding OCS in contempt of court is reversed.
REVERSED.
TRAYLOR, J., dissents and assigns reasons.
TRAYLOR, J., dissenting.
The trial court found that OCS "willfully defied" its orders, that it was aware of the custody decree awarding joint custody with the father being the custodial parent. OCS circumvented the law set forth in the Children's Code, specifically the requirement for issuance of an instanter order pursuant to La. Ch.Code art. 621 and the custody hearing requirements of La. Ch. Code art. 624. Because they did so, I would find that OCS both obstructed and interfered with the administration of justice which impaired the dignity of the court and disregarded the respect due the court's authority under La.Code Civ. Proc. art. 221. A simple phone call could have effected the proper order to be issued by the trial court. However, instead of following the law or the existing trial court custody order, OCS chose to act as they saw fit. Therefore, I would find that the trial court properly exercised its contempt power.
For these reasons, I dissent and would affirm the findings of the trial court and court of appeal.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice pro tempore, participated in the decision.
[1] In accordance with Supreme Court Rule XXXII, § 3, we have used the initials of the persons involved in this matter to protect the confidentiality of the minor child. However, because this appeal originated from a civil divorce proceeding rather than a juvenile proceeding, the captions bears the names of the parents, thereby making our efforts to protect the child practically futile.
[2] La. Ch.C. art. 621 states in pertinent part:

B. Employees of the [Louisiana Department of Social Services] must secure an instanter order before taking a child into custody.
[3] La. Ch. C. art. 624 states in pertinent part:

A. If a child is not released to the care of his parents, a hearing shall be held by the court within three days after the child's entry into custody.
B. After notice to all parties and upon a showing of good cause the court may grant, deny, or condition a requested continuance of the proceeding in accordance with the best interests of the child.
[4] La. Ch.C. art. 302(1) states:

Juvenile jurisdiction shall be exercised as follows:
(1) Special juvenile courts created by law for Caddo, Orleans, Jefferson, and East Baton Rouge Parishes shall have exclusive original juvenile jurisdiction, and any other jurisdiction conferred by the statute creating them, in the parish or parishes for which they are created. Judges of these courts shall exercise their juvenile jurisdiction according to the provisions of this Code.
[5] La. Ch.C. art. 302(2) states:

(2) District courts, except where a separate juvenile court with exclusive original juvenile jurisdiction is established by law, shall have original juvenile jurisdiction for the parish or parishes within their district.
[6] La. Ch.C. art. 303 states in relevant part:

A court exercising juvenile jurisdiction shall have exclusive original jurisdiction over:
. . .
(2) Child in need of care proceedings pursuant to Title VI.
[7] La. Ch.C. art. 604 states:

A court exercising juvenile jurisdiction shall have exclusive original jurisdiction, in conformity with any special rules prescribed by law, over any child alleged to be in need of care and the parents of any such child.
[8] At the trial court hearing, the OCS investigator described the procedure that is followed when a parent does not agree to relative placement is to determine which judge is on duty that day and attempt to take the child into care by obtaining an instanter order from that judge.