1 JAMES L. CANNELLA, Judge.
Pamela Martin (Martin), an employee of the State of Louisiana, Department of Social Services (DSS), Office of Community Services (OCS), appeals from a judgment of the Jefferson Parish Juvenile Court finding her guilty of constructive contempt and sentencing her to serve 72 hours imprisonment in parish prison, suspended, upon her paying a fíne of $35 to juvenile court. For the reasons which follow, we reverse.
Martin was the assigned case manager for A.B., who had been in foster care, in the custody of DSS/OCS since October of 1993 when she was removed from her parents for neglect. A.B. was 17 years old in November of 2003 when her case came before the juvenile court for review. At that time, A.B. was failing Geometry and wanted to quit school and take the graduate equivalency exam (GED). At the November 4, 2003 review hearing the juvenile court issued, among others, the following orders:
Court orders an evaluation to see if [A.B.] has any specialized therapeutic needs or medication
Court orders the Dept explore private technical schools for minor
[[Image here]]
Court orders a report on status with minor’s schooling as to whether or not she is in Cullier, remaining in school, Option 3, or Youth Challenge.
PNIC of status hearing set for 01/06/2004 in section C @ 09:00 AM.
Is At the follow-up hearing on January 6, 2004, Martin was not present but a DSS/ OCS representative, Lana Johnson, testified about the contents of Martin’s December 24th progress report. Johnson reported that A.B. had been accepted in the Youth Challenge Program and was scheduled to report on January 11, 2004. She also reported that an appointment with Dr. Robert Detrinis was scheduled for January 24, 2004. The juvenile court noted its displeasure with the setting of the evaluation appointment after A.B. was to leave for the Youth Challenge Program and ordered:
Court orders minor be evaluated this date to see if minor has any specialized therapeutic needs or medication. Court orders results of the evaluation be available for the court hearing on January 8, 2004.
The following day, on January 7, 2004, on the juvenile court judge’s own motion, she issued a rule to show cause to Martin “to show cause under Children’s Code article 1508 why she should not be held in contempt of court under Children’s Code article 1507.” The hearing was set for January 27, 2004. In response, DSS/OCS filed a Motion to Dismiss the Rule for Contempt. In the interim, the evaluation of A.B. was conducted and the report was filed in the record.
At the contempt hearing, Martin testified that she promptly attempted to get an appointment for an evaluation of A.B. under the procedure mandated by OCS, The Louisiana State University Management Team Clinical Evaluation Program (CEP). Following those procedures, she was told that because of holidays and pre-planned vacation by the doctor, the earliest appointment date was January 21, 2004. She was told that A.B. would be placed on a waiting list in the event of a cancellation. This appointment was made before Martin knew of A.B.’s acceptance in the Youth Challenge Program. She admitted that *1062 after the departure date for the Youth Challenge Program was set for January 11, 2004, she did not Rnotify her supervisor, the doctor or CEP about the need for an earlier evaluation appointment.
Following the hearing, the juvenile court judge found that Martin had violated the November 4, 2003 order “intentionally, knowingly and purposefully, without justifiable excuse,” and that she was guilty of constructive contempt.. It is from this ruling that Martin appeals.
On appeal Martin argues that the contempt finding is both proeedurally defective and not supported by the evidence. Martin points out that the juvenile court judge did not expressly order her to have the evaluation conducted nor was a time limit prescribed for the evaluation. On the day the order was issued, in addition to Martin, A.B. was in court with her foster mother, her Gulf Coast therapeutic family home case manager, and her CASA worker. The order was for an unspecified person to have provided a specified service at an unspecified time. Further, Martin argues that the evidence in the record is insufficient to prove beyond a reasonable doubt that she willfully disobeyed a lawful order of the court.
La. Ch.C. art. 1507, defining constructive contempt provides in pertinent part:
A constructive contempt of court is any contempt other than a direct one, including but not limited to the following:
(2) Willful disobedience of any lawful judgment, order, mandate, writ, or process of the court.
La. Ch. C. art. 1508 specifies the procedure for punishing a constructive contempt, as follows:
A.When a person is charged with committing a constructive contempt, he shall be tried by the judge on a rule to show cause alleging the facts constitut- ■ ing the contempt. The rule may be issued by the court on its own motion or on motion of any party.
B. A certified copy of the motion and of the rule shall be served on the person charged, in the manner of a | Bsubpoena, not less than forty-eight hours prior to the time assigned for trial of the rule.
C. If the person charged with contempt is found guilty, the court shall render an order reciting the facts constituting the contempt, adjudging the person charged with the' contempt guilty thereof, and specifying the punishment imposed.
Contempt proceedings are either civil or criminal in' nature. In a civil contempt proceeding, the court is attempting to obtain compliance with a court order. In a criminal contempt proceeding, the object is to punish a person for disobeying an order issued by the court. Billiot v. Billiot, 01-1298, (La.1/25/02), 805 So.2d 1170. Since the evaluation of A.B. was the subject of the court order and it had already been obtained when Martin was sentenced, this contempt proceeding was criminal. The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal proceeding against conviction of a crime except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. Billiot v. Billiot, supra. This includes , criminal contempt proceedings. Billiot v. Billiot, supra; State in the Interest of R.J.S., 493 So.2d 1199 (La.1986).
The Louisiana Supreme Court considered a case almost identical to the instant one in State in the Interest of R.J.S., 493 So.2d 1199 (La.1986). In R.J.S. an employee of the Department of Health and Human Resources (DHHR) was found guilty of constructive contempt for failing to timely have the juvenile assigned to her evaluated by a psychiatrist as ordered by *1063 the court. As in the instant case, the psychiatric evaluation order was not directed to a specific person and had no specific date for compliance. It was merely entered as a minute entry. The juvenile court, upon finding that the DHHR employee had received notice of the court’s ordered evaluation and had not complied with it timely, found the employee guilty of constructive contempt.
|fiThe Supreme Court, in reversing the contempt ruling, noted first that willful disobedience of a court order requires proof of a consciousness of the duty to obey the order and an intent to disregard that duty. The act or refusal to act must be done with an intent to defy the authority of the court. The Supreme Court found no such proof in that case. The Supreme Court noted that the evaluation order was contained in a minute entry generally directed to a governmental agency whose function was to provide social services to the court. When the employee was notified of the order she did not simply disregard it. She attempted compliance by obtaining the date of the last evaluation and attempting to obtain a report of the evaluation. Production of the report was not solely within her power. The Supreme Court noted that the employee may not have exercised proper diligence and that her performance may warrant departmental discipline, but it did not reach the level of proof beyond a reasonable doubt that “this lower level agency employee willfully refused to obey the court order or deliberately defied the authority of the court by her failure to comply timely.”
Similarly, we find the proof lacking in this case. The order to have the psychiatric evaluation conducted was not directed expressly to Martin and it did not contain a date by which compliance was required. While we agree that a date might be inferred from the scheduling date of the follow-up hearing, inference does not provide proof beyond a reasonable doubt of willful disobedience. Moreover, Martin, like the employee in R.J.S., did not simply ignore the order. She complied with departmental requirements that she go through CEP and made the appointment with the prescribed physician on the first available date. Martin, as an employee of DSS/OCS was not at liberty to choose a physician at random. The juvenile court judge herein made it clear that part of her dissatisfaction with Martin’s performance is with the CEP program and the department requirement that it be used. The juvenile court judge noted in her reasons for judgment that the 17reason for Martin’s failure to comply with the ordered evaluation timely “is a combination of Ms. Martin’s lack of diligence in complying with a court order and OCS’s internal policy whereby OCS has contracted with the Louisiana State University Management Team Clinical Evaluation Program, or CEP, to screen referrals for therapy, psychological and/or psychiatric evaluations.” While we do not necessarily disagree with the juvenile court judge’s observations that the CEP system does not operate in conformity with the Children’s Code time mandates and that it compromises the best interests of the children, Martin’s compliance with her department’s mandates negates the proof required for a finding of willful disobedience of a court order. As noted in R.J.S., perhaps Martin did not exercise proper diligence and departmental discipline is warranted, but, based on the facts before us, we cannot find that a rational trier of fact could have reasonably concluded that this lower level agency employee willfully refused to obey the court order or deliberately defied the authority of the juvenile court by her failure to have A.B. evaluated by a psychiatrist before the next court date. This insufficiency of evi *1064 dence requires reversal of the constructive contempt conviction.[1]
Despite our finding above, we feel constrained to point out that we recognize the dedication and commitment of the juvenile court judges in providing, that which is in the best interest of the children that come before them and the justifiable frustration they must feel when their efforts are blocked by bureaucratic obstacles. As pointed out by the Supreme Court in R.J.S. almost 20 years ago and quoted by the juvenile court judge herein, and unfortunately still pertinent today, “[i]t is indeed a sad commentary when a juvenile judge must resort to his contempt powers to obtain services by a governmental agency which was created to perform those services, whether the apparently longstanding problem resulted from severe un-derstaffing or from significantly undersen-sitive personnel.” Nevertheless, we 1 sagree with the juvenile court judges that the best interest of the children must be the ultimate goal.
Accordingly, for the reasons stated above, the judgment of the juvenile court finding Martin guilty of constructive contempt and sentencing her to 72 hours in parish prison, suspended, upon her paying a $35 fine, is reversed.
REVERSED.
GOTHARD, J., concurs.

. An order whose violation is intended to be punished by contempt proceedings should reasonably alert an identified person that such proceedings may result in the event of noncompliance by a specified date.