## NOT DESIGNATED FOR PUBLICATION

WRC by [signature]

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 0300

JOHN J. FAVALORO

VERSUS

MELISSA LYNN FAVALORO

*DATE OF JUDGMENT:* JAN 2 0 2022

ON APPEAL FROM THE TWENTY-SECOND JUDICIAL DISTRICT COURT
NUMBER 2016-14514, DIVISION L, PARISH OF ST. TAMMANY
STATE OF LOUISIANA

HONORABLE DAWN AMACKER, JUDGE

\* \* \* \* \* \*

Carol T. Richards
M. Damian Marinello
Elizabeth A. Zavala
Elise Madere Lee
Covington, Louisiana

Counsel for Plaintiff-Appellee
John J. Favaloro

Elisabeth Wolfe Ramirez
Covington, Louisiana

Counsel for Defendant-Appellant
Melissa Lynn Favaloro

William M. Magee
Talisheek, Louisiana

Joshua D. Allison
Covington, Louisiana

\* \* \* \* \* \*

BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, JJ.

Disposition: **JUDGMENT AFFIRMED; ANSWER TO APPEAL DENIED.**

Guidry, J., concurs in the result.
Holdridge, J. Dissents and assigns reasons by [signature]

**Chutz, J.**

Appellant, Melissa L. Favaloro, appeals a judgment holding her in contempt for violating a court order granting her ex-husband authority over educational and medical decisions regarding their two minor children. For the following reasons, we affirm. Additionally, we deny the answer to the appeal filed by appellee, John F. Favaloro.

## FACTUAL AND PROCEDURAL BACKGROUND

Melissa and John were married in 2011, and two children were born of the marriage. One of their children, JF, was diagnosed with autism spectrum disorder.

In October 2016, John filed a petition for divorce and requested he be awarded joint custody of the children and designated as domiciliary parent. Melissa answered the petition and reconvened seeking to be designated as the children's domiciliary parent. In April 2017, the trial court signed a consent judgment granting the parties joint custody, with Melissa designated as domiciliary parent. A divorce decree was rendered in January 2018. Thereafter, John and Melissa filed cross motions to modify custody and for contempt against each other, which were set for hearing on April 23, 2019.[1] On April 9, the trial court signed a *temporary* order appointing Ms. Terri Campesta as the parties' parenting coordinator pending the April 23 hearing. At the April 23 hearing, reference was made to Ms. Campesta again being appointed as parenting coordinator, but the appellate record contains no order extending her appointment. The trial court continued the parties' motions for custody and for contempt without date.

Additionally, on April 22, John had filed an "emergency petition" to be named as domiciliary parent with authority over educational and medical decisions regarding the children. He alleged Melissa had "seriously neglected the ...

---

[1] Unless otherwise indicated, all date references in this opinion are made to dates occurring in 2019.

2

children's health and educational interests ... including failing to address [JF's] serious developmental delays." Following a hearing, the trial court signed a judgment on July 8 granting John "legal authority over both children for educational decisions and medical decisions" until further order of the court.

Pursuant to the authority he was granted in the July 8 judgment, John informed Melissa on July 29 that a place was available for JF at Spears Learning Center (Spears), where he would receive therapy for his special needs. JF had been on a waiting list at Spears for over a year. Melissa was concerned by John's decision, believing JF was making progress with the therapy he was then receiving at Ochsner/Live Oak (Ochsner). She anticipated discussing the matter at the parenting coordinator meeting the parties had scheduled with Ms. Campesta that same day, July 29.[2] However, John failed to appear at the meeting.

On August 19, Melissa filed a rule for contempt against John. The alleged grounds for contempt were John's failure to attend the scheduled July 29 meeting with Ms. Campesta despite the trial court's order to cooperate in scheduling parenting coordinator meetings and John's failure to consult Melissa before making unilateral decisions regarding the children's education and medical care.[3]

At a rescheduled meeting the parties had with Ms. Campesta on August 26, John's decision to enroll JF at Spears was discussed. Ms. Campesta made no recommendation regarding whether JF should be moved to Spears. She suggested that if Spears recommended additional therapies for JF after evaluating him, the parties should inquire whether Ochsner could match the therapy program offered at

---

[2] Even though there is no judgment in the appellate record extending Ms. Campesta's temporary appointment as parenting coordinator beyond the April 23 hearing date, the parties met with her thereafter on several occasions.

[3] Melissa also sought to have both John and his attorney held in contempt for violating a court order prohibiting ex parte communications based on a letter that John's attorney sent to the court-appointed custody evaluator. However, on appeal, Melissa did not assign error to the trial court's failure to hold John and/or his attorney in contempt on this ground.

Spears and also that there should be no gaps in the therapy provided to JF. Following the meeting, Ms. Campesta sent the parties an email outlining her proposed action plan regarding JF's possible move to Spears. Contrary to Melissa's contentions, the email gives no indication of there being any understanding that JF would continue receiving therapy at Ochsner until after the parties met with her again after obtaining additional information she suggested. In fact, after the events at issue herein, Ms. Campesta filed a status report with the trial court in which she related that both parents declined a follow-up meeting, stating they could review JF's Spears evaluation and make a decision as to his therapy venue.

John's recollection was that while he had agreed at the August 26 meeting to *consider* Ms. Campesta's suggested action plan, subsequent events required him to make a decision quickly on whether to enroll JF at Spears in order not to lose his place there. On September 2, John informed Melissa that JF would be starting at Spears the next day, September 3, and she should transport him there when he was in her physical custody. Melissa responded that she intended to follow the "recommendations" of Ms. Campesta, who was on vacation from approximately August 30 to September 9, since she believed those recommendations were binding on the parties. Melissa failed to bring JF to Spears on September 5, 6, and 9. On September 9, John picked JF up at his daycare where Melissa had brought him, and took him to Spears. Later that day, Melissa went to Spears and removed JF from the premises, involving the police in her effort to do so.

That same day, John filed a rule for contempt against Melissa based on her refusal to cooperate with his decision to enroll JF at Spears. He asserted Melissa's refusal to comply with his instructions to bring JF to Spears was in violation of the July 8 judgment granting John authority to make decisions regarding the children's educational and medical needs. The following day, September 10, Melissa filed a second motion for contempt against John in which she again asserted he was in

4

contempt for missing the July 29 parenting coordinator meeting. Melissa further asserted John was in contempt for failing to follow the parenting coordinator's August 26 "recommendations" and for removing JF from daycare on September 9 and transporting him to Spears against Melissa's wishes during her court-ordered physical custody time.

On December 19, the trial court held a hearing on all three of the parties' opposing motions for contempt. At the conclusion of the hearing, the trial court denied both of Melissa's motions for contempt against John. The trial court granted John's motion, finding Melissa was in contempt of court for "arbitrarily, and without just cause, [violating] the Court's orders" granting John authority over educational and medical decisions concerning the children. The trial court sentenced Melissa to ten days in parish jail but suspended the sentence based on her fulfilling certain conditions. Those conditions were that Melissa should: (1) obey the court's order regarding John's legal authority over educational and medical decisions; and (2) pay attorney fees and costs. A hearing was held on January 14, 2020, to fix attorney fees. On September 14, 2020, the trial court signed a written judgment in accordance with its oral ruling holding Melissa in contempt and setting attorney fees at $4,259.40.

Melissa now appeals, arguing in three assignments of error that the trial court erred in finding the evidence sufficient to hold her in contempt, in failing to hold John in contempt, and in imposing an excessive sentence. John answered the appeal seeking damages for frivolous appeal.

**APPLICABLE LAW**

Contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. La. C.C.P. art. 221. A direct contempt is one committed in the immediate view and presence of the court and of which it has personal knowledge,

5

or a contumacious failure to comply with a subpoena or summons. La. C.C.P. art. 222. Any contempt other than a direct one constitutes a constructive contempt of court, including willful disobedience of any lawful judgment or order of the court. La. C.C.P. art. 224(2). A person may not be found guilty of a contempt of court except for misconduct defined as such, or made punishable as such, expressly by law. La. C.C.P. art. 227.

In a civil contempt case, the moving party bears the burden of proving by a preponderance of the evidence that the defendant violated a court order intentionally, knowingly, and purposely without justiciable excuse. *Bents v. Bents*, 15-1306 (La. App. 1st Cir. 9/9/16) (unpublished), 2016 WL 4719795, at *3, writ denied, 16-1822 (La. 11/29/16), 211 So.3d 389. A finding that a person willfully disobeyed a court order in violation of Article 224(2) must be based on a finding that the accused violated an order of the court intentionally, knowingly, and purposefully, without justifiable excuse. While a trial court's ultimate decision to hold a party in contempt of court is subject to review under the abuse of discretion standard, in the case of a civil contempt, its predicate factual determinations are reviewed under the manifest error standard. *Capital City Press, L.L.C. v. Louisiana State University System Board of Supervisors*, 13-1803 (La. App. 1st Cir. 12/30/14), 168 So.3d 669, 673-74. The trial court is vested with great discretion in determining whether a party should be held in contempt for disobeying a court order, and the court's decision should be reversed only when the appellate court discerns an abuse of that discretion. *Capital City Press, L.L.C.*, 168 So.3d at 674.

## ASSIGNMENT OF ERROR NUMBER ONE

Melissa argues the trial court abused its discretion and committed manifest error in finding John met his burden of proving she was in contempt of court. Even though she failed to transport JF to Spears as instructed by John on three occasions, Melissa maintains the record is devoid of any evidence that she possessed the

6

requisite intent, knowledge, and purposefulness to defy a court order without a justifiable excuse.

Melissa argues her failures to transport JF to Spears did not rise to the level of willful disobedience because she believed she was bound by a recommendation of Ms. Campesta's that JF should not be enrolled at Spears until after the parties had gathered information to compare the Ochsner and Spears therapy programs. According to Melissa, the trial court held her in contempt solely for failing to follow John's instructions to transport JF to Spears even though the court "did not question Melissa's sincere belief that she was required to follow the recommendations of the parenting coordinator that [JF] not be moved from Ochsner/Live Oak to [Spears] until she and John met with the parenting coordinator again, at which time they were to present the information they had obtained."

In support of her contentions that she acted in good faith without any intent to defy the trial court, Melissa testified the parties signed a contract in which they agreed to be bound by Ms. Campesta's recommendations. Therefore, Melissa testified she believed she was bound to follow Ms. Campesta's "recommendations," by which she seems to be referring to the email in which Ms. Campesta outlined the action plan discussed at the August 26 meeting.

Despite Melissa's reliance on the alleged contract, no signed contract was entered into evidence at the contempt hearing. We also note that under La. 9:358.4(C), when the parties are unable to agree, a parenting coordinator may issue a recommendation in a report to the trial court. In this case, the appellate record, which was designated by Melissa pursuant to La. C.C.P. art. 2128, contains no evidence Ms. Campesta issued any report to the trial court with recommendations regarding the proposed move to Spears prior to the events at issue, which occurred from September 5-9. Further, the status report Ms. Campesta filed with the trial court on September 10 contradicted Melissa's assertions that it was understood by

7

the parties that JF would not be moved to Spears until after the parties had obtained additional information and met with Ms. Campesta again. In the report, Ms. Campesta specifically stated both parents declined a follow-up meeting with her.

Additionally, we disagree with Melissa's contention that the trial court did not question her sincere belief that under the circumstances she was required by Ms. Campesta's "recommendations" not to transport JF to Spears on the days in question. It is implicit in the judgment of contempt rendered against Melissa that the trial court rejected her testimony in this regard. In its oral reasons for judgment, the trial court specifically found that Melissa "arbitrarily, and without just cause violated the Court's orders."

On appeal, the trial court's credibility determinations must be given great deference because only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief of what is said. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Billiot v. Billiot*, 01-1298 (La. 1/25/02), 805 So.2d 1170, 1173-74.

In the instant case, the trial court was familiar with the parties prior to the instant contempt proceeding, having presided over these proceedings for a number of years. In rendering judgment, the trial court stated, "I think I know both [parties] pretty well at this point in time, and I am the judge that's been their judge the entire time." The trial court further indicated its ruling was based on "listening to the testimony" and on the evidence submitted and "this one was pretty clear to me." Based on our review of the appellate record, we find the trial court did not abuse its discretion or commit manifest error in finding Melissa guilty of contempt based on the court's credibility evaluations and reasonable factual inferences.

8

## ASSIGNMENT OF ERROR NUMBER TWO

Melissa argues the trial court also erred in failing to hold John in contempt for his failure to attend the July 29 parenting coordinator meeting scheduled with Ms. Campesta. She alleges John failed to respond to Ms. Campesta's subsequent attempts to contact him to reschedule the meeting and, moreover, gave the trial court no credible explanation for missing the meeting.

At the contempt hearing, John admitted he missed the July 29 meeting but testified he did so unintentionally. He explained that he was in transition between jobs and had failed to put the meeting on his calendar. John further testified he was apologetic to Ms. Campesta and rescheduled the meeting. Additionally, he paid the costs of the missed meeting.

The decision whether to accept John's explanation as credible was a matter within the trial court's discretion. It is evident from the trial court's dismissal of Melissa's motions for contempt, that the court accepted John's explanation that his absence was unintentional. We are unable to say this credibility evaluation was unreasonable or an abuse of discretion.

We likewise find no error in the trial court's refusal to hold John in contempt for failing to comply with the August 26 agreement purportedly reached by the parties and/or what Melissa refers to as the "recommendation" of Ms. Campesta regarding steps to be taken before making a decision whether to enroll JF at Spears. First, although reference was made at the April 23 hearing to an extension of Ms. Campesta's temporary appointment as parenting coordinator, the appellate record contains no order extending her appointment beyond April 23.[4] At the December 19

---

[4] Because she designated the record, any inadequacy in the appellate record is imputed to Melissa. *Rover Group, Inc. v. Clark*, 18-1576 (La. App. 1st Cir. 12/12/19), 291 So.3d 699, 707, writ denied, 20-00101 (La. 3/9/20), 294 So.3d 481. We note Melissa asserted in brief that the appellate record should be supplemented with several items, which did not include an order extending Ms. Campesta's appointment as parenting coordinator. In any event, Melissa never filed a motion to supplement the appellate record.

hearing, the trial court indicated it believed Ms. Campesta's appointment expired on April 23. Thus, the appellate record fails to establish Ms. Campesta even had authority to make recommendations in this matter.

Second, the trial court evidently concluded Melissa's testimony that the parties had signed a contract agreeing to be bound by Ms. Campesta's recommendations was insufficient to establish that fact in the absence of a signed contract being introduced into evidence. Third, the appellate record contains no recommendation from Ms. Campesta prohibiting John from enrolling JF at Spears until certain steps were taken.

## ASSIGNMENT OF ERROR NUMBER THREE

Melissa argues her sentence of ten days in parish jail, suspended, was excessive. We disagree.

For failing to obey a court order, a trial court may impose upon an offender a fine of not more than $500.00 and/or a sentence of not more than three months imprisonment. La. C.C.P. art. 227; La. R.S. 13:4611(d)(i). Absent a manifest abuse of the discretion given in the imposition of sentences within statutory limits, a sentence imposed by a trial court should not be set aside as excessive. A sentence will be considered excessive if it is grossly out of proportion to the severity of the crime, or if it is nothing more than the needless imposition of pain and suffering. *Leger v. Leger*, 00-0505 (La. App. 1st Cir. 5/11/01), 808 So.2d 632, 638.

In the instant case, Melissa was held in contempt not for a single act of contempt, but for thwarting John's decision (which the trial court had granted him authority to make) that JF attend Spears on three separate occasions. On one of those occasions, Melissa even involved the police in her effort to remove JF from the Spears premises. Under the circumstances, we find no abuse of discretion in the suspended ten-day sentence imposed by the trial court.

10

Melissa further argues the condition of her suspended sentence that she obey the trial court's order "respecting [John's] position as having the legal authority over the children's medical and education" is so unclear as to require clarification. To the contrary, we believe this condition is clear and requires no clarification. The trial court's July 8, 2019 judgment unambiguously grants John authority to make decisions respecting the children's education and medical care. While the judgment does not prohibit Melissa from voicing objections to or disagreements with John's decisions in those areas, it clearly requires her to comply with those decisions regardless of her objections or disagreements. The condition for suspension of sentence imposed by the trial court merely requires Melissa to obey the July 8 judgment granting John authority over educational and medical decisions.

Lastly, Melissa requests that in the event we affirm the contempt judgment against her, the sentence be modified to afford her an opportunity to purge herself from contempt. This court has previously held a trial court is not required to give a party held guilty of contempt an opportunity to purge the contempt if constitutional safeguards such as notice, representation by counsel, and an opportunity to be heard have been provided. See *Leger*, 808 So.2d at 637; *Wall v. Wall*, 230 So.2d 420, 425 (La. App. 1st Cir. 1969). Further, a purge clause is a provision in the contempt judgment allowing the defendant to avoid imprisonment by performance of the required act or compliance with the court's judgment. *Bents*, 2016 WL 4719795, at *3; *Leger*, 808 So.2d at 806, n.3. In this case, the trial court imposed a sentence of ten days in jail, but suspended the sentence upon the conditions that Melissa obey the judgment granting John authority over educational and medical decisions concerning the children and pay attorney fees and costs. Thus, because the penalty imposed was conditional, it allowed Melissa to purge herself of the contempt by complying with the trial court's judgments. See *Bents*, 2016 WL 4719795, at *3.

11

## ANSWER TO APPEAL

In an answer to Melissa's appeal, John alleges he is entitled to attorney fees and costs for defending against Melissa's frivolous appeal. He alleges the appeal failed to raise any serious legal issue and/or was taken solely for the purpose of delay.

Damages for frivolous appeal may be awarded pursuant to La. C.C.P. art. 2164, which is penal in nature and must be strictly construed. Moreover, appeals are favored and penalties for frivolous appeal will not be imposed unless they are clearly due. Even when an appeal lacks serious legal merit, damages for a frivolous appeal will not be awarded unless it is clear that the appeal was taken solely for the purpose of delay or that appellant is not serious in the position he advocates. *Dukes v. Acres Apartments*, 04-0405 (La. App. 1st Cir. 12/30/04), 898 So.2d 416, 418.

In this case, although the contentions Melissa raised on appeal lack merit, the record contains no indication the appeal was taken solely for the purpose of delay or that she did not seriously advocate the contentions made. Accordingly, damages for frivolous appeal are not warranted.

## CONCLUSION

For the above reasons, the September 14, 2020 judgment of the trial court is affirmed. The answer to this appeal is denied. All costs of this appeal are assessed against appellant, Melissa L. Favaloro.

**JUDGMENT AFFIRMED; ANSWER TO APPEAL DENIED.**

JOHN J. FAVOLORO

VERSUS

MELISSA LYNN FAVOLORO

NO. 2021 CA 0300

COURT OF APPEAL

FIRST CIRCUIT

STATE OF LOUISIANA



**HOLDRIDGE, J., dissenting.**

I will respectfully dissent in this case. I find that the trial court abused its direction and committed manifest error in finding the appellant in contempt of court. In a civil contempt case, the moving party bears the burden of proving by a preponderance of the evidence that the defendant violated a court order intentionally, knowingly, and purposely without a just excuse. See **Keene v. Holdsworth**, 53,649 (La. App. 2 Cir. 1/13/21), 318 So.3d 417, 421; **Hanna v. Hanna**, 53,210 (La. App. 2 Cir. 11/20/19), 285 So.3d 116, 121-22. In this case, Mr. Favoloro failed to meet his burden of proof on any ground. The actions of the appellant were not proven to be intentional, knowingly, or without a just excuse. It appears from the record that the appellant's actions were justified in her attempt to obtain clarification of the decision of the parenting coordinator. The contempt powers should be used with great caution by the trial court and not as a weapon to be wielded by a disgruntled ex-spouse or his attorney in a family court setting.

I realize that this case is a civil contempt case since the purpose of the court's order is to force compliance with the order as opposed to a criminal contempt case where the purpose is to punish disobedience of the court's order. See **Turbine Powered Technology, LLC v. Crowe**, 2021-0351 (La. App. 1 Cir. 10/7/21), ___ So.3d ___, ___. However, I am concerned that in cases where the defendant may actually be required to serve a jail sentence, due process would require that the mover prove beyond a reasonable doubt every fact necessary to find the defendant guilty of contempt.