Judgment rendered May 25, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,481-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

IN RE: JUDICIAL COMMITMENT OF M.M.
(EDWARD BROSSETTE CONTEMPT PROCEEDING)

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 618,253

Honorable Karelia R. Stewart, Judge

* * * * *

| | |
|---|---|
| BUREAU OF LEGAL SERVICES, LA DEPT. OF HEALTH<br>By: Fernin F. Eaton<br>Neal R. Elliott, Jr.<br>Krystal Airs Brown | Counsel for Appellant, Edward M. Brossette |
| RONALD J. MICIOTTO<br>JUSTIN P. SMITH | Counsel for Appellee, Hon. Robert Waddell |

* * * * *

Before MOORE, STONE, and ROBINSON, JJ.

**MOORE, C.J.**

Edward Brossette, an attorney with the Louisiana Department of Health ("LDH"), Office of Behavioral Health ("OBH"), appeals a judgment that found him in constructive contempt of court for disobeying two portions of a rule in a judicial commitment case: to include another arm of LDH, the Office for Citizens with Developmental Disabilities ("OCDD"), in the action, and to return the patient, MM, to Caddo Parish for a placement hearing. For the reasons expressed, we affirm.

### FACTUAL BACKGROUND

In a previous opinion, *In re Commitment of MM*, 53,577 (La. App. 2 Cir. 9/23/20), 303 So. 3d 1095, this court set aside an earlier finding of contempt on grounds that Brossette was entitled to have the contempt rule heard by a judge other than the one who accused him of contempt. For purposes of clarity, we will restate the essential facts.

The patient, MM, was a 57-year-old woman in the Lafayette area with the dual diagnosis of schizoaffective disorder (a mental illness) and intellectual disability (a developmental disability). She was receiving daily assistance from OCDD for the latter condition. At some point, the mental illness flared up, she became dangerous to herself and to others, and OCDD felt it could no longer meet her needs. MM was admitted to Brentwood Hospital, in Shreveport, on July 25, 2019, as no psychiatric beds were available in the Lafayette area.

Brossette, an experienced attorney but relatively new to LDH, filed a petition for judicial commitment under La. R.S. 28:54, et seq., the behavioral health law (notably, not the developmental disability law). The case was assigned to Judge Robert Waddell (now retired), who appointed a Mental

Health Advocacy Service attorney, Mr. Sale, to represent MM, and a psychiatrist, Dr. Ogundeji, to examine her. Mr. Sale immediately argued that the commitment should be handled under the developmental disability law. At a hearing on August 7, Brossette did not submit the doctor's report, and Judge Waddell upbraided him about this. Two days later, Brossette amended his petition, to require Dr. Ogundeji to issue a report three days before the next hearing.

At that hearing, August 14, Judge Waddell told Brossette that OCDD was a necessary party. Brossette, however, replied that OCDD's services would be "available" to MM once her psychiatric issues had been resolved. Dr. Ogundeji testified that MM was dangerous to herself and to others, and qualified for judicial commitment. Judge Waddell fixed a commitment hearing for August 28.

Before that date, however, a space opened at Northlake Behavioral Health System, in Mandeville. Brossette emailed Judge Waddell and Mr. Sale about this on August 27, and, getting no objection from Judge Waddell, had MM transferred there promptly. Mr. Sale, however, objected.

At the placement hearing, August 28, Brossette called two OCDD witnesses who testified that MM really needed to be handled through the behavioral health process, not the OCDD system; however, Mr. Sale argued that she needed OCDD services. Judge Waddell told Brossette that he had not intended for MM to be placed until the placement hearing could be held, and he refused to sign the proposed placement judgment.

Judge Waddell ordered Brossette to have MM returned to Caddo Parish for that hearing (as well as for further evaluation). Judge Waddell also reminded Brossette that he (Brossette) needed to make OCDD a party to

2

the action.  Brossette replied, "We're not going to amend the petition to proceed under OCDD."  Later, Brossette filed a motion to dismiss the commitment petition, and obtained a physician's emergency certificate to allow MM to stay at Northlake.

At the next hearing, September 9, Brossette called Ms. Landry, an LDH regional attorney in Lafayette, to try to explain LDH's approach to cases like this: mental health treatment must come before developmental disability services.  Brossette also offered a letter from MM's psychiatrist at Northlake saying that it was not safe for her to make the trip from Mandeville to Shreveport, in her current condition.  Judge Waddell said the case was "fouled up from the first" and denied Brossette's motion to dismiss; however, he declared MM "mentally ill" and committed her to LDH custody for 180 days maximum.  He added that he was considering citing Brossette and LDH for contempt of court, and fixed a hearing on this for September 11.

At the September 11 hearing, Judge Waddell found that Brossette "just did not do what I said," held him in contempt, and imposed a fine of $500 and 24 hours in jail, suspended.  Brossette objected and requested a hearing on the matter; Judge Waddell set this for October 15.

Before that hearing, Judge Waddell filed a rule nisi against Brossette for contempt, citing his (1) failure to timely file Dr. Ogundeji's report, (2) failure to include OCDD in the matter, (3) transferring MM to Northlake without court authority, and (4) failure to transport her back to Caddo Parish after being specifically ordered to do so.

Brossette filed a motion for an impartial judge to hear the contempt rule; at the hearing, October 15, Judge Waddell denied this.  He then found

3

Brossette in contempt, fining him $100 and sentencing him to four hours in Caddo Correctional Center – not suspended.

Brossette applied for a writ, which this court converted to an appeal. *In re Commitment of MM*, *supra*. We reversed and set aside the judgment and remanded the case to be heard by a different, impartial judge. Back in the First JDC, the matter was assigned to Judge Karelia Stewart and, eventually, the parties submitted the case on the record.

## ACTION OF THE DISTRICT COURT

Ruling from the bench, Judge Stewart carefully summarized the facts, recognizing that there had been "some confusion" in the commitment procedure. As to Count 1, failure to timely file the doctor's report, she found no intent to violate the court's order; as to Count 3, transporting MM to Northlake without the court's permission, she found the attorneys "acknowledged confusion."

As to Count 2, however, she found that Judge Waddell directed Brossette to "bring in/include OCDD" three times on August 7, once on August 14, and again on August 28, but then Brossette replied that he was *not going to amend* the petition to do so. Judge Stewart found that this proved intent to defy the authority of the court.

As to Count 4, she found that there was conflicting evidence whether carrying MM back to Shreveport would have been safe, but Brossette himself created the whole problem when he moved her there in the first place, and there was "much" he could have done to cure the issue; thus, there was willful disobedience of the court's order. She also observed that a judge is entitled to rely on an attorney as an officer of the court; if the attorney disagrees, his remedy is to take a writ, not to disobey the court's

4

order. She imposed a $100 fine, to be stayed until the matter is fully appealed, and no jail time. Brossette appealed suspensively.

## THE PARTIES' POSITIONS

Brossette designates three assignments of error:

**Assignment 1:** The court erred in finding him guilty of constructive contempt for failing to include OCDD in the mental health judicial commitment.

**Assignment 2:** The court erred in finding him guilty of constructive contempt for not returning MM to the jurisdiction of the court after being specifically ordered to do so.

**Assignment 3:** The court erred in imposing a fine of $100 on Brossette.

By way of background, Brossette urges that most attorneys and judges are simply not familiar with the commitment processes for dually diagnosed patients. The distinction, he asserts, is explored in the series of cases culminating in *Matter of Commitment of Cole*, 18-1760 (La. App. 1 Cir. 4/17/19), 276 So. 3d 601: persons with developmental disability are handled through the developmental disability law, La. R.S. 28:451.1 – 455.2 (the domain of OCDD); those with mental illness are handled through the behavioral health law, La. R.S. 28:1 – 237, especially R.S. 28:54 (the domain of OBH, Brossette's agency).[1] The crux of the issue is that when a person already receiving OCDD assistance develops a sudden mental illness, she must be placed pursuant to the behavioral health law (OBH) until she is restored to her baseline functioning, at which time the services of OCDD can be recommenced. Brossette contends that this is where Judge Waddell went totally wrong: he simply failed to grasp that MM's psychiatric condition

---

[1] The earlier case was *In re Commitment of Cole*, 18-916 (La. App. 3 Cir. 1/16/19), 2019 WL 212178, and the later, *Matter of Cole*, 19-1163 (La. App. 1 Cir. 12/27/19), 293 So. 3d 1163, *writ denied*, 20-00184 (La. 3/9/20), 307 So. 3d 1029.

could not be addressed by OCDD, but only by OBH, and this is why he (Brossette) refused to bring OCDD into the suit.

Brossette shows that constructive criminal contempt must be proved beyond a reasonable doubt, *Billiot v. Billiot*, 01-1298 (La. 1/25/02), 805 So. 2d 1170.[2] He concedes that he was accused of "willful disobedience of any lawful judgment, order, mandate, writ, or process of the court," La. C.C.P. art. 224 (2), and with conduct "intended to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority," La. C.C.P. art. 224 (10). He contends that there was reasonable doubt and justifiable excuse for his conduct.

As for Assignment 1, Brossette restates the grand, interlocking scheme of OBH and OCDD services provided in Title 28, as interpreted in *Commitment of Cole*, *supra*, and asserts the "overwhelming evidence" that MM needed inpatient mental health commitment. Even though he told Judge Waddell, "We're not going to proceed under OCDD," he contends this did not prove "willful defiance to not make OCDD a party" but only an effort to explain to the judge that LDH simply could not proceed under the developmental disability law. He concedes his conduct was "clumsy," and he was "new to the judicial commitment laws and process," but urges that his total conduct established reasonable doubt and justifiable excuse. At oral argument, counsel further suggested that OCDD was not a juridical person, and thus not capable of being joined as a party.

---

[2] He also criticizes two of this court's recent opinions for, in his view, misstating the burden of proof, *Miller v. Madison Parish Police Jury*, 53,955 (La. App. 2 Cir. 5/17/21), 320 So. 3d 479, *Young v. Young*, 54,038 (La. App. 2 Cir. 6/30/21), 323 So. 3d 991. We would point out that *Miller* and *Young* were both cases of *civil contempt*, in which the burden of proof is always a preponderance.

As for Assignment 2, Brossette shows that he offered a physician's letter stating that MM could not be transported back to Shreveport, due to her health, and nobody showed that he could have overridden those doctor's orders. He submits that these facts create reasonable doubt and justifiable excuse for his conduct. He also argues that under R.S. 28:55 E(2), it is not the district court, but LDH, that can determine placement of a patient; far from willfully disobeying the court, he was merely trying to facilitate the statute.

As for Assignment 3, he suggests that the Mental Health Advocacy attorney, Mr. Sale, was at fault for not giving the court clearer guidance, and that Judge Waddell was at fault for not accepting the testimony of his witness, Ms. Landry, who laid out the LDH procedure at the September 9 hearing. He submits that the blame should not be placed on the "new regional attorney," and concludes that the judgment and fine should be reversed.

Judge Waddell responds that the case is simple: Brossette felt that the judge was wrong in his ruling, and therefore he (Brossette) was justified in not carrying it out. He cites Brossette's statement at the August 28 hearing, "We're not going to amend the petition to proceed under OCDD," as sufficient to prove willful disobedience of the direct order to bring OCDD into the proceeding. As to the other count, Judge Waddell shows that he had already admonished Brossette for sending MM to Mandeville without consent of the court, and he clearly ordered him to bring her back for the placement hearing. Despite the letter from MM's psychiatrist, the decision to leave her at Northlake was essentially Brossette doing what he "feels should be done and not what the judge ordered done." Judge Waddell

7

concludes that there was no manifest error, and the judgment should be affirmed.

## APPLICABLE LAW

Willful disobedience of any lawful judgment, order, mandate, writ, or process of the court is a constructive contempt of court. La. C.C.P. art. 224 (2). Also, any act or omission intended to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority, and which is not a direct contempt, is a constructive contempt of court. La. C.C.P. art. 224 (10). To find a person guilty of constructive contempt, the court must find that he violated the order of court intentionally, knowingly, and purposely, without justifiable excuse. *Lang v. Asten Inc.*, 05-1119 (La. 1/13/06), 918 So. 2d 435; *Arrington v. Arrington*, 41,012 (La. App. 2 Cir. 4/26/06), 930 So. 2d 1068. Willful disobedience means a consciousness of the duty to obey and an intent to disregard that duty. *Dauphine v. Carencro High Sch.*, 02-2005 (La. 4/21/03), 843 So. 2d 1096. In a criminal contempt proceeding, the court seeks to punish a person for disobeying a court order; the burden of proof is beyond a reasonable doubt. *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 108 S. Ct. 1423, 99 L. Ed. 2d 721 (1988); *Billiot v. Billiot*, *supra*.

To constitute willful disobedience necessary for criminal contempt, the act or refusal must be done with an intent to defy the authority of the court. *Dauphine v. Carencro High Sch.*, *supra*; *Fox v. Fox*, 49,619 (La. App. 2 Cir. 4/22/15), 164 So. 3d 359, *writ not cons.*, 15-1162 (La. 9/18/15), 177 So. 3d 1063. In proceedings for criminal contempt, orders of the trial judge in the conduct of trials must be obeyed, irrespective of the ultimate validity of the order, unless the trial judge stays the order or ruling to permit

8

a review. *Dauphine v. Carencro High Sch.*, *supra*; *Jaligam v. Pochampally*, 16-0286 (La. 2/25/16), 184 So. 3d 1270 (Crichton, J., concurring).

## DISCUSSION

The issue raised by the first assignment is whether Brossette's refusal to make OCDD a party was willful, under La. C.C.P. art. 224 (2), and whether, beyond a reasonable doubt, his conduct was intentional, knowing, purposeful, and without justification, *Lang v. Asten*, *supra*; *Arrington v. Arrington*, *supra*. Brossette has conceded that his conduct toward Judge Waddell was "clumsy" and he was new to judicial commitment law. He has not contested the first part of the test, and the record amply supports the district court's finding that Judge Waddell gave him a direct order, which he refused to carry out multiple times.

The topic came up in three consecutive hearings, and Brossette admitted that even if commitment was under OBH procedure, the services of OCDD would still be available. For instance, on August 14, this colloquy occurred:

> THE COURT: Did you turn around and make them [OCDD] a party?
>
> MR. BROSSETTE: Sir, I have checked with LDH. She will be – the ODCC services will be available for her. But due to the fact that we believe that she's a danger to herself and others under the criteria which will come out, I believe, at the commitment hearing –
>
> ***
>
> THE COURT: Although I'm sympathetic to the legal argument, I still feel that we need to have the hearing on the regular judicial commitment.
>
> ***

9

> MR. BROSSETTE: And Judge, also – although I know it [is] only persuasive authority – the Derrick Cole case out of the first circuit addresses that issue.

> THE COURT: I'll tell you what: I'll let y'all put that on as a proffer at the end[.]

Given his admission that OCDD would ultimately be involved in the case, Brossette's repeated refusal to join that office as a party fully supports the court's finding of contempt. Even after Judge Waddell offered to let him put the *Cole* case in a proffer, Brossette would not follow the original order. Notably, the court's order must be obeyed, "irrespective of the ultimate validity of the order." *Dauphine v. Carencro High Sch.*, *supra*. The potential relevance of *Cole*, *supra*, simply does not rise to the level of justification. We perceive no error in the district court's findings and conclusion.

Finally, we note that the Louisiana Department of Health is a body corporate with the power to sue and be sued. La. R.S. 36:251 A. OCDD is an office within LDH. La. R.S. 28:451.2 (19). The state and its departments are juridical persons. La. C.C. art. 24, Comment (c); *Lacerte v. State*, 19-1401 (La. App. 1 Cir. 1/4/21), 317 So. 3d 763. There is no merit to counsel's suggestion that OCDD could not be made a party. Brossette's first assignment lacks merit.

The issue raised by the second assignment is whether Brossette's failure to return MM to the jurisdiction of the court after being specifically ordered to do so was conduct intended to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court, La. C.C.P. art. 224 (10), proved beyond a reasonable doubt, *Lang v. Asten*,

*supra*; *Arrington v. Arrington*, *supra*. He principally argues that the letter from MM's psychiatrist at Northlake provided justification for his conduct.

On close review, we find the record supports the district court's finding that if there was a problem, it was mostly of Brossette's own making. MM had been at Brentwood for over a month, Judge Waddell had already held two hearings, and the third was set for August 28; however, on the eve of that hearing, August 27, Brossette emailed Judge Waddell and Mr. Sale about the opening at Northlake; without court approval, he moved her there. He later obtained a physician's emergency certificate to keep her there, and at the hearing on September 9, he introduced the psychiatrist's letter saying it was not safe for her to return to Shreveport. This whole sequence of events smacks of an effort to remove MM from the reach of the court and then to use emergency medical means to keep her out of reach. This proves, beyond a reasonable doubt, an intent to obstruct or interfere with the orderly administration of justice *and* to impair the dignity of the court.

Brossette further contends that he was in no way trying to obstruct the law but, rather, to facilitate its purpose, as expressed in La. R.S. 28:55 E(2), by placing MM in the most appropriate facility. This subsection states, "Following commitment of the respondent to the department, the department shall consider all of the following [factors] in determining the appropriate state treatment facility in which to place the respondent[.]"

It is almost redundant to state, however, that the first part of this subsection, R.S. 28:55 E(1), makes the commitment a determination of the *court:*

> If the *court* finds by clear and convincing evidence that the respondent is dangerous to self or others * * * it shall render a judgment for [the respondent's] commitment. After considering all relevant circumstances, * * * *the court* shall determine whether the respondent should be committed to a treatment facility[.] However, if the placement determined by the court is unavailable, *the court* may commit the respondent to [LDH] for appropriate placement[.] ***

In short, a judicial determination of the legal standard, and a judgment of commitment to LDH, are prerequisites for the exercise of placement by LDH – an orderly administration that Brossette's conduct thwarted. The second assignment of error lacks merit.

The issue raised by the third assignment is whether the blame for Brossette's conduct should be shifted to Mr. Sale, the Mental Health Advocacy attorney, and to Judge Waddell. Brossette contends, in essence, that they persisted in the wrongheaded view that the developmental disability law played a part in a case of acute mental illness and behavioral health.

For the reasons already discussed, Brossette's conduct went beyond disagreement with Mr. Sale and Judge Waddell, or advocacy for MM, and into the realm of defying a direct order and removing MM from the court's reach. As noted, refusal to follow a court order is contempt, "irrespective of the ultimate validity of the order." *Dauphine v. Carencro High Sch.*, *supra*. This assignment does not present reversible error.

## CONCLUSION

For the reasons expressed, the judgment of contempt and fine of $100 are affirmed. Edward Brossette is to pay all costs.

**AFFIRMED**.

12