STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

22-429

IN RE MARSHALL LEGACY FOUNDATION

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, DOCKET NO. 2015-3683
HONORABLE KENDRICK GUIDRY, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*\*\*\*

**LEDRICKA J. THIERRY**
**JUDGE**
\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Jonathan W. Perry, and Ledricka J. Thierry, Judges.

**AFFIRMED.**

Hunter W. Lundy
Rudie R. Soileau
T. Houston Middleton, IV
Lundy, Lundy, Soileau & South, LLP
501 Broad St.
Lake Charles, LA 70601
(337) 439-0707
COUNSEL FOR PLAINTIFF/APPELLEE:
        Preston L. Marshall

Daniel A. Kramer
Lundy, Lundy, Soileau & South, LLP
501 Broad St.
Lake Charles, LA 70601
(337) 439-0707
COUNSEL FOR PLAINTIFF/APPELLEE:
        Preston L. Marshall

James M. Garner
Joshua S. Force
Ashley G. Coker
Sher, Garner, Cahill, Richter, Klein & Hilbert, LLP
909 Poydras St., Suite 2800
New Orleans, LA 70112
(504) 299-2100
COUNSEL FOR PLAINTIFF/APPELLEE:
        Preston L. Marshall

**Wilford D. Carter**
**Wilford Carter Law, LLC**
**1025 Mill St.**
**Lake Charles, LA  70601**
**(337) 564-6990**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Preston L. Marshall**

**Michael R. Davis**
**Tim P. Hartdegen**
**Richard A. Sherburne**
**Hymel, Davis & Patterson, LLC**
**10602 Coursey Blvd.**
**Baton Rouge, LA  70816**
**(225) 298-8118**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Elaine T. Marshall**

**Walter M. Sanchez**
**Alexander H. Reed**
**Sanchez & Burke, LLC**
**1200 Ryan St.**
**Lake Charles, LA  70601**
**(337) 433-4404**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Elaine T. Marshall**

**Todd S. Clemons**
**Janet D. Madison**
**Todd Clemons & Associates, APLC**
**1740 Ryan St.**
**Lake Charles, LA  70601**
**(337) 477-0000**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Stephen D. Cook**

**Kelly T. Scalise**
**Dena L. Olivier**
**Liskow & Lewis, APLC**
**702 Poydras St., Suite 5000**
**New Orleans, LA  70139**
**(504) 581-7979**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Stephen D. Cook**

**THIERRY, Judge.**

This matter arises out of a dispute over the control of the Marshall Legacy Foundation (hereafter the Legacy Foundation), which was created on December 23, 2013. On that date the Fourteenth Judicial District granted Elaine Marshall's request to divide the previously created Marshall Heritage Foundation (hereafter Marshall Heritage Foundation-Old) into two new foundations: the Marshall Heritage Foundation (hereafter Marshall Heritage Foundation-New) and the Legacy Foundation. The Legacy Foundation was to be governed by three co-trustees, Elaine Marshall, Dr. Stephen Cook and Preston Marshall.

On September 14, 2015, Preston first filed suit seeking authorization from the district court for certain payments from the Legacy Foundation accounts. That suit was amended to add Elaine and Dr. Cook as defendants, seeking to enjoin them from taking certain actions in administering the Legacy Foundation. The amended suit also claimed that Dr. Cook engaged in self-dealing and requested he be removed as a co-trustee because he had arranged a grant from the Marshall Heritage Foundation-Old to the Fellowship of Orthopaedic Researchers, Inc. (hereafter the Fellowship), from which Dr. Cook and his wife, Samantha Salkeld, received compensation.

In pursuit of his claims, Preston subpoenaed Dr. Cook's and his wife's personal tax returns and tax records from the years 2000-2014, as well as tax returns and corporate records from the Fellowship, all research support agreements between the Fellowship and Dr. Cook, and copies of any proposals by the Fellowship to the Marshall Heritage Foundation-Old or the Legacy Foundation. Dr. Cook and Ms. Salkeld filed a motion to quash and for a protective order.

The matter came for hearing on November 17, 2015, following which a judgment was signed denying the motion to quash filed by Dr. Cook and Ms. Salkeld

and ordering them to produce the requested documents. The district court stayed production of the personal tax returns of Dr. Cook and Ms. Salkeld and entered a protective order, pending the disposition of a writ application they intended to file with this court. On January 16, 2016, this court denied the writ filed by Dr. Cook and Ms. Salkeld, finding no abuse of discretion in the district court's ruling. *In Re: Marshall Legacy Foundation*, 15-1206 (La.App. 3 Cir. 11/25/15)(unpublished writ decision.)

Dr. Cook and Ms. Salkeld then filed a writ application with the Louisiana Supreme Court. The supreme court granted the writ, holding:

> Granted. The judgment of the district court ordering production of relator's personal tax returns is vacated. The case is remanded to the district court to make a finding of whether the party requesting these tax returns has demonstrated good cause for their production and whether the information sought could be discovered in a less obtrusive manner. *See Stolzle v. Safety & Systems Assur. Consultants, Inc.*, 02-1197 (La. 5/24/02), 819 So.2d 287.

*In Re: Marshall Legacy Foundation*, 16-215 (La. 2/12/16), 186 So.3d 1171.

On remand from the Louisiana Supreme Court, the district court held an evidentiary hearing on the requested subpoenas of Dr. Cook's and Ms. Salkeld's tax records. At the conclusion of the hearing, after hearing expert testimony from Daphne Berken, a certified public accountant, the district court held:

> [The expert's] saying that she needs to see the tax returns to form an opinion to see what the compensation is before she can [form] an opinion, whether or not it's reasonable or not. . . . And the bottom line is [the expert] needs to consider all the sources of revenue that flow from Dr. Cook's work with the Fellowship. I think the need has been demonstrated because the question is, is the compensation reasonable in the context of this – not only this litigation, but in terms of whether or not it constitutes self-dealing. Dr. Cook is entitled to some reasonable compensation and in order to find out if it's reasonable or not she would need to know with that – what that income or compensation is, whether it's W-2 wages or whether its benefits that Dr. Cook will receive as a nonemployee, whether or not payments were made by third parties, payments for various items by third parties that he would have to report as income on his tax returns. I've not been given any alternative sources for this information. I find that the need

has been demonstrated and that the tax returns are the – Dr. Cook's and his wife's tax returns are the best and most reliable source of income and other benefits. And I don't see a less intrusive means of obtaining that information, even through the 1099s. It wouldn't list everything that [the expert] has stated that she would need to see to form the opinion that she's asked to give. I'm going to order the production of the tax returns from Dr. Cook and his wife.

In accordance with those findings, the district court rendered a judgment on June 21, 2016, ordering Dr. Cook and Ms. Salkeld to produce the subpoenaed tax returns, but also entered a stay of the production in order to allow Dr. Cook to seek appellate review.

A writ application was then filed with this court requesting we overturn the district court's judgment ordering the production of the tax returns. In finding the district court did not abuse its discretion in finding the tax return were the best and most reliable sources of income and benefits and there was not a less intrusive means of obtaining the information, this court noted:

> Preston has continuously argued that the tax returns were the only way that he could "show that Cook's compensation was unreasonable, constituting self-dealing," because the tax returns would show the amount of compensation as well as the sources of compensation. It is not feasible to require Preston to ask for particular bank statements and checks. Those would not present all sources of income, and Preston has no information from which to determine what checks or bank statements would be relevant. Thus, this court finds that there is no less intrusive means of obtaining the information that will be gathered from the tax returns.

*In Re: Marshall Legacy Foundation*, 16-527, p. 8 (La.App. 3 Cir. 2/15/17), 212 So.3d 656, 662. Dr. Cook's and Ms. Salkeld's writ application with the Louisiana Supreme Court was denied on May 12, 2017. *In Re: Marshall Legacy Foundation*, 17-479 (La. 5/12/17), 219 So.3d 1104.

Following the supreme court's writ denial, Dr. Cook made a partial production of the subpoenaed documents. He produced the Form 1040s of his tax returns for the years 2005-2014. Dr. Cook did not produce any of his tax return schedules,

Form 1099s, or W-2s for those years. Further, no documents whatsoever were produced for the years 2000-2004. A discovery conference was held on June 28, 2017 to discuss the partial response to the subpoena. No agreement to the satisfaction of the parties was reached.

In response, on June 30, 2017, Preston filed a "Motion for Judgment of Contempt of Court and to Compel Production of Documents Responsive to Subpoena." In his motion, Preston alleged Dr. Cook had "purposely disobeyed the subpoena duces tecum and orders of [the court]." Preston requested the district court hold Dr. Cook and Ms. Salkeld in "constructive civil contempt and order production of the documents requested by subpoena and prior orders of [the] court. Further, the Court should order Stephen Cook and Samantha Salkeld to pay reasonable attorney fees and costs of the instant motion pursuant to La.Code Civ.Pro. Art. 1469(4)." Dr. Cook countered that he had produced all the tax records he had in his possession. He further maintained he did not have to produce any additional tax records because:

> [the] subpoena stated that Dr. Cook and Ms. Salkeld could produce "personal tax returns and/or tax records, including W-2s for the years 2000 through 2014, or an original Form 2848. . . ." The term "and/or" is disjunctive. At best the phrase "and/or" is confusing. . . . Accordingly, it was more than reasonable to interpret the subpoena as requesting the personal tax returns *or* the other information listed.

It was also asserted that Preston was not entitled to recover attorney fees under La.Code Civ.P. art. 1469(4).

On April 2, 2019, the district court held an evidentiary hearing on the contempt motion. Dr. Cook was the only witness to testify at the hearing. Dr. Cook stated he produced only the first two pages of his tax returns (the 1040s) for the years 2005-2014 because he was under the impression these pages alone were his tax returns. He further explained he did not sign the Form 2848 to obtain any missing tax records from the IRS, because he "believed what was turned in was sufficient to

4

comply with the subpoena" and he "didn't need to request anything from the IRS." He further testified he did not produce any of the schedules to his tax returns, Form 1099s or W-2s because he "didn't save them." He explained the failure to turn over any documents for the years 2000-2004 was due to all his personal records prior to 2005 being lost as a result of Hurricane Katrina. When asked, Dr. Cook acknowledged he did not attempt to contact any of the professionals who prepared his tax returns to obtain any copies.

In his oral comments at trial, the district judge made it clear he believed Dr. Cook could have and should have done more to produce the requested documents. The district judge stated as follows:

> If you don't have them in the filing cabinet at your house, then it is incumbent on the person who's directed to produce the documents to try and get them from other sources.
>
> . . . .
>
> And I keep coming back and it's the same thing in my own mind, more could, should have been done. This is a feeble, if not futile, attempt to comply with the Court's order. I know you're looking at the black letter of the words used in the order. You know, I didn't say, or the order didn't say "and" go to your CPA, "and" go to the IRS, "and" do this, "and" do that, but its just – at this point I don't think it's a reasonable response for people who have been in this kind of business and litigation and sophistication and prior lawsuits.
>
> . . . .
>
> Let me talk to you guys in real terms. We talk about gamesmanship. This is gamesmanship 101. And I'm not happy with it. There's been other instances of gamesmanship, but it doesn't involve this Court's order that has gone up and back twice over a number of years. . . Everybody in this room knows what a subpoena is for tax records and returns, everybody. And I think it is disingenuous that we are at this point, or that we've gotten to this point. And we're talking about litigants who have been through the mill in court more than once, on both sides of a petition. It's not rocket science. This is unbelievable and inexcusable, that we've gotten to this point where we've gotten to today where we still haven't gotten compliance. . . .
>
> I find that Dr. Cook is in contempt. And again, much more could have been done much sooner. And you don't walk around with a

contempt rule hanging over your head for a couple of years and not try and address it.

. . . .

Let me just say this, Dr. Cook was very evasive on the witness stand. And I know when this goes up on appeal they always, of course, look at the credibility call that the trial court makes. Dr. Cook was less than credible. If I sound a little angry, it's because I am, because I'm also offended.

Although making a finding of contempt, the district court chose not to impose sanctions at that time, instead ordering the parties to submit post-hearing memoranda on the issue of sanctions.

In his memorandum on sanctions, Preston noted he had "no desire to punish Dr. Cook," and did not wish to see him sentenced to any imprisonment. Preston simply sought "sanctions against Dr. Cook under [La.Code Civ.P.] art. 1471, including but not limited to the striking of Dr. Cook's defenses and dismissal of his claims, the payment of reasonable attorney fees and costs incurred in bringing" the contempt and sanctions motions.

In his memorandum, Dr. Cook asserted the only reasonable sanctions under La.Code Civ.P. art. 1471 would be the payment of Preston's costs and attorney fees associated with the filing of Preston's motion and the contempt hearing. Dr. Cook opposed any dismissal of his defenses and claims as inappropriate. He also maintained that imprisonment was not warranted or proper because Preston only asked that Dr. Cook be held in constructive contempt.

Prior to the ruling on sanctions, Judge Ware, who had presided over all litigation in this matter, left the bench and was replaced by Judge Guidry. On January 21, 2022, a hearing on the contempt motion to address the question of sanctions was held. Judge Guidry noted he had read the transcript from the April 2,

2019 hearing and post-hearing memoranda. Judge Guidry then read his judgment

into the record:

> Judge Ronald Ware made an oral ruling on the issue of contempt and requested post-hearing memoranda regarding the issue of sanctions. Judge Kendrick J. Guidry, as successor Judge, reviewed the hearing transcripts and post-hearing memoranda and now rules as follows: It is hereby ordered, adjudged and decreed pursuant to the post-hearing memoranda, [La.Code Civ.P.] Articles 221 et seq.[,] 1471 et seq. and [La.R.S.] 13:4611 that Dr. Cook be held in contempt of Court and Dr. Stephen Cook be fined $500 payable to the Court from his personal account, along with court costs, reasonable expenses, and attorneys fees associated with this matter, including preparation and filing of pleadings, preparation and filing of pleadings, preparation for the hearing, attendance at the hearing, and the post-hearing memoranda.

> It is further ordered that Dr. Stephen Cook will submit and promptly execute the appropriate IRS forms for his tax documents within seven business days from the execution of this judgment. Failure to comply will result in further sanctions, including possible dismissal of Dr. Stephen Cook's claims.

Dr. Cook timely perfected this appeal, wherein he only challenges the district

court's contempt holding, not the sanctions that were imposed. He asserts the

following assignments of error:

1. Judge Ware abused his discretion by finding Dr. Cook in contempt of court because Preston did not prove beyond a reasonable doubt (or by a preponderance of the evidence) that Dr. Cook violated a court order intentionally, knowingly and purposefully without justifiable excuse.

2. Judge Ware erred by finding that "more should have been done" and in using that finding as a basis for holding Dr. Cook in contempt.

3. Judge Ware erred by not reciting the facts constituting Dr. Cook's contempt.

For the reasons that follow, we find the trial court did not err in holding Dr. Cook in

contempt.

## ANALYSIS

The Louisiana Code of Civil Procedure defines contempt of court as "any act

or omission tending to obstruct or interfere with the orderly administration of justice,

or to impair the dignity of the court or respect for its authority." La.Code Civ.P. art.

7

221. "Willful disobedience of any lawful judgment, order, mandate, writ, or process of the court constitutes constructive contempt of court." La.Code Civ.P. art. 224. To find a person guilty of constructive contempt, it is necessary to find that he or she violated the order of the court intentionally, knowingly and purposefully, without justifiable excuse. *Billiot v. Billiot*, 01-1298 (La. 1/25/02), 805 So.2d 1170. In *Sonnier v. Town of Vinton*, 99-927, p. 3 (La.App. 3 Cir. 12/22/99), 759 So.2d 818, 820, this court stated:

> To find a person or entity guilty of constructive contempt, it is necessary to find that he or it violated the order of court intentionally, knowingly and purposefully, without justifiable excuse. In making this determination, the trial court is vested with great discretion. *City of Kenner v. Jumonville*, 97-125, 97-210, 97-602 (La.App. 5 Cir. 8/27/97); 701 So.2d 223, *writ denied*, 97-2890 (La. 1/30/98); 709 So.2d 718, *cert. denied*, 524 U.S. 953, 118 S.Ct. 2371, 141 L.Ed.2d 739 (1998); *Reeves v. Thompson*, 95-0321 (La.App. 4 Cir. 12/11/96); 685 So.2d 575. The manifest error rule is used when appellate courts are called to review the propriety of civil contempt orders. *Parish of Jefferson v. Lafreniere Park Found.*, 98-345 (La.App. 5 Cir. 9/15/98); 720 So.2d 359, *writ denied*, 98-2598 (La. 10/28/98); 723 So.2d 965.

### I.     Civil v. Criminal Contempt.

"A contempt of court proceeding is either criminal or civil, which is determined by what the court primarily seeks to accomplish by imposing sentence." *Billiot*, 805 So.2d at 1173 (citing *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535 (1966)). "In a criminal contempt proceeding, the court seeks to punish a person for disobeying a court order, whereas in a civil contempt proceeding, the court seeks to force a person into compliance with a court order." *Id.* (citing *State in the Interest of R.J.S.*, 493 So.2d 1199, 1202 & n. 7 (La.1986)).

Dr. Cook now contends, for the first time on appeal, that the district court sanctioned him for *criminal* contempt rather than civil contempt, which would require proof of contempt by the enhanced standard of beyond a reasonable doubt. We agree with Preston that the district court's primary purpose in holding Dr. Cook

in contempt was to compel him to produce the requested tax documents sought in the subpoena. The district court ordered Dr. Cook to execute the applicable IRS forms to produce the copies of the tax documents covered by the subpoena. Simply because an additional fine was assessed against Dr. Cook does not change the primary purpose sought to be accomplished by the trial court holding Dr. Cook in contempt.

Preston cites several cases where the imposition of a fine did not conclusively establish the contempt as criminal in nature when the trial court also sought to compel compliance with an earlier order. In *Parish of Jefferson v. Lafreniere Park Foundation*, 98-345 (La.App. 5 Cir. 9/15/98), 720 So.2d 359, *writ denied*, 98-2598 (La.10/28/98), 723 So.2d 965, the trial court imposed a $500 fine for each act of contempt in failing to produce certain documents. Despite that, the court concluded the contempt proceedings were civil in nature, explaining:

> In this judgment, the trial judge ordered the Foundation to pay a fine, but also ordered compliance with the November 14, 1997 court order. Although she only fined Chambers and Berlier in the judgment, she states in her reasons for judgment that "The goal of this Court is to have those funds rightfully restored." Thus, her intent was to have the funds restored and to force compliance with the judgment rendered on November 14, 1997. Thus, we find that the contempt proceedings were civil in nature.

*Id.* at 365.

Similarly, in *In re Jones*, 10-66 (La.App. 5 Cir. 11/9/10), 54 So.3d 54, the appellate court issued a number of rulings to compel compliance with a consent judgment, and the imposition of attorney fees as punishment did not render the contempt proceeding criminal in nature.[1]

---

[1] We do note that in *Jones*, the attorney fee award was converted to a fine because, at the time, La.R.S. 13:4611 did not allow the imposition of attorney fees.

We further note, in his memorandum on sanctions, Preston specifically requested "that Dr. Cook be held in constructive civil contempt." He sought only to hold Dr. Cook in civil contempt, compel production of the documents requested in the subpoena and recover attorney fees and costs for Dr. Cook's failure to comply. Preston further stated he had "no desire to punish Dr. Cook," and did not wish to see him sentenced to any imprisonment. In his memorandum on sanctions, Dr. Cook maintained that imprisonment was not warranted or proper because Preston only asked that Dr. Cook be held in constructive contempt.

Our review of the record convinces us the district court's primary purpose in holding Dr. Cook in contempt was to compel him to produce the requested tax documents sought in the subpoena. Thus, we find that the contempt proceedings were civil in nature and the preponderance of the evidence standard applies in this case.

## II.    *Abuse of Discretion.*

The trial court has vast discretion in determining whether a party should be held in contempt for disobeying a court order, and its decision will be reversed only when the appellate court finds an abuse of that discretion. *McDonald v. McDonald*, 08-1165 (La.App. 3 Cir. 3/4/09), 10 So.3d 780. Dr. Cook contends the district court abused its discretion in holding him in contempt. Dr. Cook asserts that Judge Ware did not provide "any specific reasons for finding him in contempt." We disagree with this assertion. Judge Ware specifically stated he found Dr. Cook to be "very evasive on the witness stand" and found his testimony to be "less than credible." This is an implicit rejection of Dr. Cook's testimony that he produced only the Form 1040's in response to the subpoena because that was what he assumed constituted his "tax return." Judge Ware also concluded Dr. Cook's assertions that he assumed he had produced what was necessary to satisfy the subpoena to be not a "reasonable

10

response for people who have been in this kind of business and litigation and sophistication and prior lawsuits."

Preston also notes that at the evidentiary hearing on the contempt motion held on April 2, 2019, Preston's expert stated that Dr. Cook's tax return "means his 1040 and any schedule or other forms attached that would have been filed with the Internal Revenue Service." Therefore, Judge Ware was not "buying" Dr. Cook's testimony that there was confusion as to what documents were needed to comply with the subpoena.

The trial court also rejected Dr. Cook's argument that he adequately complied with the subpoena because he produced all documents that were "within his possession." This court in *Landry v. Comeaux*, 07-891, pp. 8-9 (La.App. 3 Cir. 12/5/07), 971 So.2d 434, 440, addressed an identical argument made therein by the defendant who had been found in contempt by the lower court:

> We are not swayed by Comeaux's argument that because he does not have these documents in his custody or control, the trial court erred by finding him in contempt of court. Louisiana Civil Code Article 1461 grants a party the authority to request documents "which are in the possession, custody, or control of the party upon whom the request is served." It was within Comeaux's control to obtain and produce copies of his financial statements to Landry. Whether Comeaux has actual possession of these financial documents is of no consequence to this court. What is pertinent is that Comeaux could have easily requested and obtained copies of any and all of said documents from his banking or financial institution(s). This financial information would have aided him both in defense of the motion to increase and in support of his own motion to decrease. Again, Comeaux made no such request. His failure was unequivocally non-compliant with what he was ordered to do by the trial court's December 5, 2005 order. Thus, we find no abuse in the trial court's vast discretion in imposing the contempt sanction of $500.00 against Comeaux for his failure to comply with its December 5, 2005 discovery order.

Likewise, we find no merit in Dr. Cook's argument that simply because he did not have his complete tax returns in his custody or control, the trial court erred by finding him in contempt of court.

11

Dr. Cook also argues Judge Ware based his contempt finding on "prior 'gamesmanship' between the parties." Judge Ware addressed that issue in open court, stating:

> We talk about gamesmanship. This is gamesmanship 101. And I'm not happy with it. There's been other instances of gamesmanship, ***but it doesn't involve this Court's order that has gone up and back twice over a number of years***.

Judge Ware acknowledged there had been "gamesmanship" on the part of all parties, however he made it clear his contempt ruling was based on Dr. Cook's continual refusal to comply with the subpoena issued by the court.

In conclusion, the district court held Dr. Cook in contempt because he failed to comply with the court's order and subpoena. Dr. Cook acknowledged he made no effort to collect or preserve his tax records, all the while fighting Preston's subpoena during several years of court challenges. The district court noted Dr. Cook was "evasive" and "less than credible" in his testimony and specifically held Dr. Cook's actions were "a feeble, if not futile, attempt to comply with the Court's order." Therefore, we find the trial court did not abuse its discretion in holding Dr. Cook in contempt of court.

### III. *Recitation of the Facts Constituting Contempt.*

Lastly, Dr. Cook argues the district court did not comply with La.Code Civ.P. art. 225(B), which provides:

> If the person charged with contempt is found guilty the court shall render an order reciting the facts constituting the contempt, adjudging the person charged with contempt guilty thereof, and specifying the punishment imposed.

Dr. Cook does concede in brief that "even when the district court fails to recite the facts constituting contempt in a written order, the jurisprudence has recognized that this requirement is satisfied if such facts are recited by the district court in open court." *Davidson v. Castillo*, 52,727, p. 14 (La.App. 2 Cir. 8/14/19), 276 So.3d 1157,

1166 (citing *In re Succession of LeBouef*, 13-209 (La.App. 1 Cir. 9/9/14), 153 So.3d 527; *Garrett v. Andrews*, 99-1929 (La.App. 1 Cir. 9/22/00), 767 So.2d 941).

As noted above, a review of Judge Ware's reasons recited in open court establishes he found Dr. Cook in contempt for failing to produce the requested tax records previously ordered by the district court in its June 21, 2016 judgment. Therefore, the record provides a factual basis for the judgment of contempt.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against appellant, Dr. Stephen Cook.

**AFFIRMED.**